158 A.2d 150 (1960)
David S. LOWRY et al.
v.
ZONING BOARD OF REVIEW OF the CITY OF EAST PROVIDENCE.
M. P. No. 1285.
Supreme Court of Rhode Island.
February 24, 1960.
*151 Graham, Reid, Ewing & Stapleton, Owen P. Reid, Providence, for petitioners.
Sarkis Tatarian, City Sol., East Providence, for respondent.
FROST, Justice.
This is a petition for a writ of certiorari to review the decision of the zoning board of review of the city of East Providence granting the application of Gwendolyn K. Fairchild and Eloise Fairchild for an exception under the zoning ordinance to permit the use for a nursing home of certain premises owned by them. Pursuant to the writ the pertinent records have been certified to this court.
The applicants are the owners of lots numbered 150, 221 and 222 on assessor's plat No. 31. The premises which are located at 366 Newman avenue have a frontage of 85 feet, a depth of approximately 300 feet, and are in a residence A district. On the lots there are two houses which are physically connected, the one in the rear being occupied by the owners and the one nearer the highway by a tenant.
The applicants are the owners of lots numbered 150, 221 and 222 on assessor's plat No. 31. The premises which are located at 366 Newman avenue have a frontage of 85 feet, a depth of approximately 300 feet, and are in a residence A district. On the lots there are two houses which are physically connected, the one in the rear being occupied by the owners and the one nearer the highway by a tenant.
The owners have given an option to purchase the property to three registered nurses who desire to establish a nursing home for convalescent patients. There would eventually be a maximum of eight patients in each house. The prospective owners of the nursing home would live elsewhere than on the premises, but each would work an eight-hour shift.
Burton P. Batty of Rumford, a real estate operator and the agent of the owners for the sale of the property in question, testified at the hearing before the board that in his opinion the contemplated nursing home would have no effect on the valuation of neighboring properties. He also testified that one house is now rented for $150 per month.
On the other hand, Richard A. Hurley, Jr., also of Rumford and a real estate expert, testified that in his opinion a nursing home would tend to depreciate the value of neighboring properties; that the property in question was readily salable at a price greater than that for which the owners had agreed to sell; and that the house in the rear could be rented for $150 per month.
It appears that petitioners are the owners of land adjoining and westerly of applicants' land, that their house is numbered 350 Newman avenue, and that other remonstrants were Edna R. MacDonald of 344 Newman avenue and Harold E. Baker of 330 Newman avenue. All the remonstrants were of the opinion that the nursing home, if permitted, would tend to depreciate the value of neighboring properties.
There was a letter in evidence from Eliza H. Appleton, who owns lot 20 which is southerly of applicants' land, saying that *152 she had no objection to the granting of the exception. There was also before the board a letter from James V. Turner, superintendent of the water department, since the city owns a strip of land easterly of applicants' land and between it and the water, stating that until the area was sewered any additional waste from the close proximity to the water supply could be a potential menace, and that therefore the board of water commissioners would not be in favor of a change of use of the land in question.
The application was granted with certain conditions as to approval by the building, health and plumbing departments of the city, by the fire department, and by the state department of social welfare. The board of review concluded, "The motion to grant is made because we feel that the welfare of the people in this community would be served by providing a nursing home of this type and it will not devalue the abutting property owners as a residential area."
In their petition applicants sought an exception or variance under the ordinance, chapter 43, section 15, subparagraph 8, meaning no doubt, sec. 15 B, subpar. (8). While the applicants sought an exception or variance, counsel for the option holders stated at the hearing that a variance was not being sought but only an exception.
The term nursing home is not mentioned in the zoning ordinance of the city. Originally a hospital or sanitarium other than for the insane or feeble-minded and for contagious or infectious diseases was a permitted use in a residence A district, but on May 2, 1950 the ordinance was amended by removing these uses from a residence A district and placing them as permitted uses in a residence B district. We do not deem it necessary to consider whether a nursing home is a hospital or a sanitarium or neither. From the evidence it is reasonably inferable that those who desire to purchase the premises in question plan to operate a nursing home for pecuniary gain, that is, they intend to operate a business, and the question therefore before the board was: Should it grant an exception to carry on a business in a residence A district?
The broad frontage of the lots shown on the plat and their depth together with the rental value of the houses would indicate that the area involved is an excellent one for residential purposes. Since a nursing home as such is nowhere mentioned in the zoning ordinance it would seem to properly come within the language of sec. 5 A of chap. 43 as amended by chap. 159, which reads in part: "Business (`C') District. In a business district no building or premises shall be used, and no building shall be erected or structurally altered which is arranged, intended or designed to be used, for other than one or more of the following uses: * * * (4) * * * Any use not provided for as a permitted use in any other district, provided such use is not a use by special permit, or a noxious or offensive use by reason of the emission of dust, odor, smoke, gas fumes, noise or vibration."
Therefore, assuming that a nursing home is a permitted use in a business district, did the board have authority to grant an exception permitting such use in a residence A district? The applicants in their petition sought such an exception under chap. 43, sec. 15 B, subpar. (8). The pertinent portion of this paragraph reads: "Permit the location * * * in any residence district of a garage for motor vehicles or of any use authorized in a business district * * * provided, in either case, there shall be on file with the said board the consents, duly signed and acknowledged, of the owners of 60 per cent of all the lands within such area as the said board shall have determined to be specially affected by such proposed use or structure * * *." From an examination of the zoning ordinance we are of the opinion that the applicants made reference to the proper section if in any event an exception could be granted. However, the board *153 could not grant the requested exception under this section because admittedly it did not have the required consent of nearby owners.
But counsel for the board insists that an exception could properly be granted under sec. 15 B, the pertinent parts of which read:
"Special exceptions. When in its judgment the public convenience and welfare will be substantially served and the appropriate use of neighboring property will not be substantially or permanently injured, the Zoning Board of Review may in a specific case, after public notice and hearing and subject to appropriate conditions and safeguards, authorize special exceptions to the regulations herein established as follows:
* * *
"(2) Permit the location in any use district of a state or municipal building, college building, boat house, bath house, office building, public utility plant, ice house, green house, hen house, tool shed, barn, stable, kennel, piggery, aviation field, amusement park, fair grounds, circus grounds, crematory, cemetery, penal or correctional institution, sanitarium for the insane or feeble-minded, hospital for contagious or infectious diseases, sewage disposal or treatment plant, garbage disposal plant, refuse dump, stone-cutting plant, gravel or sand pit."
Again in the above-quoted section a nursing home is not mentioned. This section appears to give exceedingly broad authority to the board but even here such authority is not absolute. Section 15 B which gives the board authority to grant special exceptions uses the words "substantially served" and "will not be substantially or permanently injured." It can hardly be denied that if a bank, a laundry or a supermarket were permitted to be established in a residence A district of any municipality some few would be favorably affected by the presence of such business, but the ordinance requires more than this. The board found that the welfare of the people in this community would be served, but in the record there is no evidence of a need for a nursing home in the community in question, nor is there any evidence that the public convenience and welfare would be substantially served.
In Harte v. Zoning Board of Review, 80 R.I. 43, 91 A.2d 33, we used language that well might be relied on in this case. At page 51, of 80 R.I., at page 37 of 91 A.2d, referring to the power of a zoning board to grant exceptions, the court stated, "In our judgment such language did not contemplate that applications for an exception would become a routine alternative method to provide extensive changes in zones that were fixed by the council. Nor was it intended thereby to empower the board to introduce into any and every zone the uses mentioned in sec. 24B of the ordinance, even though otherwise prohibited, merely because they might commend themselves to the board's unrestricted discretion. Further, in our judgment the statute was not intended to authorize an application for an exception as an easy means to avoid the necessity of seeking a variance with the consequent burden thereunder of showing undue hardship."
For the reasons stated, we are of the opinion that the decision of the board constitutes an abuse of discretion.
The petition for certiorari is granted, the decision of the respondent board is reversed, and the records in the case which have been certified to this court are ordered returned to the board.