153 A.2d 127 (1959)
Frank L. BUDLONG et al.,
v.
ZONING BOARD OF REVIEW OF THE CITY OF CRANSTON.
M. P. No. 1273.
Supreme Court of Rhode Island.
July 15, 1959.
Charles F. Cottam, Edward W. Day, Jr., James M. Sloan, III, Providence, for petitioners.
Frank W. Golemba, City Sol., James DiPrete, Jr., Asst. City Sol., Francis A. Monti, Providence, for respondent.
FROST, Justice.
This is a petition for a writ of certiorari to review and quash the decision of the respondent board granting the application of Edward C. Spring and his wife Laura C. Spring and Thomas G. Gattone, a funeral director, for an exception under the zoning ordinance of the city of Cranston to permit the premises owned by the Springs and located at 594 Pontiac avenue in that city to be used as a funeral home. Pursuant to the writ the pertinent records have been certified to this court.
The property in question comprises a lot on the northerly side of Pontiac avenue with a frontage of 175 feet, a depth of 235 feet and contains 41, 125 square feet. It was purchased about seven years ago by the Springs and at that time there was on the lot a one-family house which has since been made into a four-apartment house. At the time of the hearing all the apartments were rented.
Pontiac avenue is a four-lane arterial highway. The Spring property is numbered lot 692 on assessor's plat No. 5, section 2. For approximately 100 feet in depth on the northerly side of Pontiac avenue, from Forest avenue westerly for a distance of about 762 feet including the southerly portion of lot 692, the land is zoned for apartments. Continuing in a westerly direction for about 800 feet to Rolfe street the zoning is predominantly business with some dwellings. Rolfe street was mentioned by the chairman of the board as the center of the business district of Cranston.
On the southerly side of Pontiac avenue from Waldron avenue, which in reality is the continuation of Forest avenue as it crosses Pontiac avenue, the land westerly to Colonial avenue is zoned for apartments; from Colonial avenue to Oakland *128 avenue, a distance of approximately 400 feet, the zoning is for business; and from Oakland avenue to Blackamore avenue, a distance of approximately 400 feet, the zoning is for dwellings.
United Star Super Market is located in a large commercial building with an extensive parking area on the northerly side of Pontiac avenue approximately 340 feet westerly from the Spring property. The Butterfield Funeral Home is located on lot No. 639 on the northerly side of Pontiac avenue approximately 1,000 feet westerly of the property in question. There are two doctors' offices on the southerly side of Pontiac avenue at or near the corner of Branch avenue and also an optometrist's office.
It thus appears from the evidence that Pontiac avenue, from Forest and Waldron avenues on both sides, westerly to or near Colonial avenue, a distance of approximately 800 feet, is residential in character. In almost the center of this area Thomas G. Gattone desires to establish a funeral home. Doctor Francis A. Holland, who has his office and lives at 599 Pontiac avenue, nearly opposite the Spring property, testified that he purchased his property a year ago, and that he had no objection to the funeral home.
Frank L. Budlong who lives at 604 Pontiac avenue, which is next to the house which Mr. Gattone desires to use for a funeral home, testified that he owns two lots between lot 692 and Forest avenue, and that his mother lives on the westerly side next door to the house now owned by the Springs. Norman E. White, of 593 Pontiac avenue, stated that he had owned his house for eight years and objected to the funeral home because the section is residential. Mrs. Vernon P. Kenyon testified that she and her husband owned the premises at 579 Pontiac avenue; that they had lived there for eighteen years; that she did not like the idea of a funeral home so close by; and that she also objected because of the parking problem and depreciation of property.
Mrs. Ethel Kilstrom stated that she was a widow and had lived at 583 Pontiac avenue for thirty-two years, and that she objected because of the loss of privacy, loss of parking facilities and depreciation of property. Mr. Louis Iannuccilo testified that he owned the house he lived in at 652 Pontiac avenue and that he also owned the house numbered 691 Pontiac avenue; that he objected to the funeral home because it was a residential section; that such a home was an undesirable business in a residential section; that no one likes to live in the neighborhood of a funeral home; and that such a home depreciates property. Several other persons, some owners and some tenants, stated that they were opposed to the funeral home.
The board took a view of the premises described in the application and later gave a decision in writing granting the application with certain limitations and conditions. They found that the exception as granted would serve the public convenience and welfare, would not substantially or permanently injure the appropriate use of neighboring property, would be in harmony with the character of the neighborhood and appropriate to the uses or buildings authorized in that district, and that the granting of the exception was necessary to secure an appropriate development of the lot in question.
The application for an exception was made under the provisions of chapter 31, section 27 B 8, B 9 and C of the zoning ordinance. At the beginning of the hearing before the board the applicants withdrew any right which they might have under section 27 C.
Section 27 B provides in substance that where public convenience and welfare will be substantially served and the appropriate use of neighboring property will not be substantially or permanently injured the board of review may authorize special exceptions as follows:

*129 "(8) In any district any use or building deemed by the board of review to be in harmony with the character of the neighborhood and appropriate to the uses or buildings authorized in such district;
"(9) In any district, such modification of the requirements of this chapter as the board may deem necessary to secure an appropriate development of a lot where adjacent to such lot there are buildings that do not conform to the provisions and regulations of this chapter."
The board made certain findings as already stated. The question for this court is: Are these findings reasonably supported by the evidence? In our opinion they are not.
The property in question is almost in the center of a portion of Pontiac avenue, approximately 800 feet in length, which is predominantly residential in character. It cannot reasonably be said in the circumstances here that public convenience requires a funeral home at the location which Mr. Gattone desires, since there now is such a home on Pontiac avenue about 1,000 feet westerly.
On the question of the effect of a funeral home upon property valuations, the experts differed. Robert Lister, who testified for the petitioners, expressed the opinion that the funeral home if permitted would tend to depreciate surrounding property particularly abutting property. Nicholas J. Caldarone thought otherwise. He appeared to base his opinion in part on the fact that there was a nonconforming use in the rear and westerly of the Spring property. He also thought that the business situation was "tight," as he expressed it, on Rolfe street and business must of necessity move easterly on Pontiac avenue. The residents in the immediate neighborhood of the proposed funeral home, while not real estate experts, were of the opinion that if permitted it would depreciate their properties.
The section of Pontiac avenue under consideration is not zoned for business. A funeral home which is a business use may be permitted there only if allowed by the board of review. In considering the instant case reference may well be made to what this court said in Harte v. Zoning Board of Review, 80 R.I. 43, at page 52, 91 A.2d 33, at page 37: "As we have stated previously, the power to grant exceptions is broad but its exercise by the board is not without some limitation. That power was intended to be used sparingly in exceptional cases to prevent placing on the property unnecessary burdens which would in effect deprive an owner of the reasonable and beneficial use of his property and to provide a flexibility in exceptional cases that would protect the owner against arbitrary effects that might follow from a literal enforcement of the terms thereof."
In the instant case Mr. and Mrs. Spring remodelled their house by converting it into four apartments all of which were rented at the time of the hearing before the board. It is reasonably inferable from the evidence that a sale to Mr. Gattone would be highly beneficial from a monetary point of view. Certainly their desire to sell is not open to criticism unless such sale would be to the disadvantage of the community.
The situation here is somewhat different from that revealed by a reading of Messinger v. Zoning Board of Review, 81 R.I. 159, 99 A.2d 865. In that case the house which was desired for a funeral home was in a residence A district but was outmoded as a single-family dwelling because of its size.
Basically as shown by the record the only persons aided by the decision of the board are the applicants. We are of the opinion that the evidence clearly indicates that the exception as granted would not serve the public convenience and welfare, would substantially injure the appropriate use of neighboring properties, is not *130 required to secure an appropriate development of the lot in question, and is therefore an abuse of discretion.
The petition for certiorari is granted, the decision of the respondent board is quashed, and the records in the case which have been certified to this court are ordered sent back to the board with our decision endorsed thereon.