172 A.2d 590 (1961)
FRANK L. BUDLONG et al.
v.
ZONING BOARD OF REVIEW OF THE CITY OF CRANSTON.
M. P. No. 1386.
Supreme Court of Rhode Island.
July 10, 1961.
Motion for Reargument Denied July 19, 1961.
*591 Charles F. Cottam, Edward W. Day, Jr., James M. Sloan, III, Providence, for petitioners.
Charles Kelley, City Solicitor, Abraham Goldstein, Assistant City Solicitor, for City of Cranston, for respondent.
Monti and Monti, Francis A. Monti, for applicant.
PAOLINO, Justice.
This is a petition for a writ of certiorari to review the decision of the zoning board of review of the city of Cranston granting the application of Thomas G. Gattone for a special exception under the zoning ordinance permitting him to use certain premises owned by him in a residence district for a funeral home. The writ was issued and pursuant thereto the pertinent records have been certified to this court.
The property in question is located on the northerly side of Pontiac avenue. It is designated as 594 Pontiac avenue and is otherwise described as lot No. 692 on assessor's plat No.5, section 2. It has a frontage of 175 feet on Pontiac avenue, a depth of 235 feet and an area of 41,125 square feet. The front portion to a depth of 100 feet is zoned as an apartment house district and the remainder as a dwelling house district. A one-family residence which has been converted into a four-apartment house is located on the premises. It is situated in both zones.
Pontiac avenue is a four-lane arterial highway. The northerly side of Pontiac avenue, to a depth of approximately 100 feet, from Forest avenue westerly for a distance of about 762 feet including the southerly portion of applicant's land, is zoned for apartments. Continuing in a westerly direction for about 800 feet to Rolfe street the zoning is predominantly business.
The land on the southerly side of Pontiac avenue, westerly from Waldron avenue to Colonial avenue, is zoned for apartments; from Colonial avenue to Oakland avenue, a distance of approximately 400 feet, the zoning is for business; and from Oakland avenue to Blackamore avenue, a distance of approximately 400 feet, the zoning is for dwellings.
A super market is located in a large commercial building with an extensive parking area on the northerly side of Pontiac avenue approximately 340 feet westerly from the applicant's premises. Another funeral home is located on the northerly side of Pontiac avenue approximately 1,000 feet westerly of the property in question. A nonconforming industrial use is located on the same side of Pontiac avenue in the immediate area of the applicant's land. There are two doctors' offices on the southerly side of Pontiac avenue at or near the corner of Branch avenue and also an optometrist's office.
About two years ago an application for the relief which the applicant now requests was granted by the board. On review this court granted a petition for certiorari and quashed the decision of the board. On the basis of the record before us at that time we held that the board had abused its discretion in granting a special exception. See Budlong v. Zoning Board of Review, 89 R.I. 431, 153 A.2d 127.
*592 Thereafter, on November 4, 1960, the application in the instant case was filed with the board for a special exception under sec. 27 B (8) and (9) of the zoning ordinance, requesting permission to use the premises for a three-family dwelling and a funeral home. The applicant requested permission to remodel the first floor in accordance with plans submitted with the application and to erect two signs measuring not more than five feet by three feet. It appears from the plans that he proposes to use the first floor as a funeral home and the upper section for three apartments; that the exterior of the building will not be changed architecturally; and that provision for off-street parking has been made.
Several witnesses appeared at the hearing before the board. These included owners of property in the area, real estate experts and others who testified either for or against the granting of the application. In addition numerous exhibits, consisting of petitions, photographs and other matters which the opposing parties deemed pertinent, were presented.
The petitioners and the other remonstrants based their objections, in substance, on the contentions that the area in question was essentially residential in character; that the proposed use would substantially alter the character of the area; that there was no need for an additional funeral home in Cranston; that the public convenience and welfare would not be served by another funeral home in the area; that the proposed use would create additional traffic problems; and that it would adversely affect the value of surrounding properties.
The applicant introduced evidence which is in direct conflict with that of petitioners and their witnesses. The applicant's real estate expert testified that in his opinion the highest and best use of the applicant's premises was for business uses; that Pontiac avenue was a highly traveled main highway; that traffic on said highway had increased a little since November 1958; that the appropriate use of neighboring properties would not be substantially injured by the proposed use; that a funeral home would be in harmony with the character of the neighborhood and appropriate to the uses or buildings authorized in the districts in question; and that the establishment of a funeral home on the lot in question would not depreciate the value of surrounding properties.
The applicant also introduced evidence showing the percentage of one racial group to the whole population in the city of Cranston and the desire of many members of that group for more funeral homes operated by funeral directors of that particular group. The president of the Rhode Island Funeral Directors Association testified that there was a need in Cranston for another funeral home to serve persons of the ethnic group in question. Mr. Raymond Butterfield, who operates a funeral home at 500 Pontiac avenue, appeared as a witness for petitioners in opposition to the application. He testified that he knew of no funeral homes in Cranston which could not then or in the foreseeable future accommodate more business and that in his opinion the public welfare or convenience did not necessitate or require additional funeral homes. However, he agreed that religion and nationality weigh heavily in the selection of a funeral director.
After the hearing and after viewing the premises in question, the surrounding neighborhood and the general area in the vicinity of the proposed funeral home, the board entered a decision granting the application for a special exception pursuant to the provisions of sec. 27 B (8) and (9) of the ordinance. The exception was granted subject to certain restrictions and safeguards which the board set forth in its decision.
The pertinent provisions of chapter 31, sec. 27, of the ordinance, entitled "Powers of board of review," are as follows:
"B. Special exceptions. When in its judgment the public convenience and welfare will be substantially served and the appropriate use of neighboring property will not be substantially or permanently injured, the board of review may in a specific case, after public notice and hearing and subject to appropriate conditions and safeguards, authorize special exceptions to the regulations herein established as follows:
* * *
"(8) In any district any use or building deemed by the board of review to be in harmony with the character of the neighborhood and appropriate to the uses or buildings authorized in such district;
"(9) In any district, such modification of the requirements of this chapter as the board may deem necessary to secure an appropriate development of a lot where adjacent to such lot there are buildings that do not conform to the provisions and regulations of this chapter."
In its decision the board stated that in considering the application it gave particular attention to the following facts: (1) That there is a nonconforming industrial use in existence on property which abuts the premises in question. (2) That there is a super market immediately west of the nonconforming industrial use. (3) That from the super market west to Laurens street the character of the entire area is essentially business including the Butterfield Funeral Home located on lot No. 639. (4) That there is located in the general area an industrial use consisting of a Class IV Cleansing Plant. (5) That there is also located in the general area, and a short distance from the premises in question, on the opposite side of Pontiac avenue, two substantial business blocks. (6) That Pontiac avenue is a main thoroughfare connecting Rolfe street with route No. 5. (7) That the application and plans as presented make adequate provision for off-street parking along the sides of and to the rear of the proposed funeral home. (8) That the exterior of the building on said premises will not essentially be changed in architectural form.
The board also noted that it took into consideration the fact that its prior decision had been quashed by this court. However, it stated that it was of the opinion that in the instant case the applicant presented substantial evidence showing a need at the location in question for the type of funeral home he proposed to conduct. On the basis of the record before it, the board found that the granting of the instant exception would substantially serve the public convenience and welfare; that the granting of the exception would not substantially or permanently injure the appropriate use of neighboring property; that the proposed use would be in harmony with the character of the neighborhood and appropriate to the uses or buildings authorized in the districts in question; and that the exception was necessary to secure an appropriate development of the lot in question.
The petitioners contend that the findings of the board are not supported by the evidence and that the board abused its discretion in granting a special exception under sec. 27 B (8) and (9).
It is well established that on certiorari the decision of a zoning board will not be disturbed unless it is not supported by legal evidence and is so arbitrary and unreasonable as to show a clear abuse of discretion. The burden of showing such abuse of discretion is on those who seek to reverse a decision of a zoning board. Perrier v. Board of Appeals, 86 R.I. 138. The petitioners in the instant case have such burden.
We have examined the record to determine whether there is any legal evidence to support the decision of the board. After careful consideration it is our opinion that there is sufficient evidence to support the board's decision and that its action was not arbitrary or unreasonable. The board has expressly found that the proposed use would not substantially or *594 permanently injure the appropriate use of neighboring property. There is evidence in the record to sustain such finding. It is true that the evidence on this issue is in conflict. But it is well settled that on certiorari this court does not ordinarily weigh evidence. Hazen v. Zoning Board of Review, 90 R.I. 108, 155 A.2d 333.
The board also found that the proposed use would substantially serve the public convenience. In our opinion there is competent evidence in the record to sustain such finding. The president of the funeral directors' association stated that there was need for an additional funeral home in Cranston. It cannot reasonably be said that funeral homes do not serve the public convenience and welfare.
We must also be realistic and recognize the obvious fact that generally ethnic and religious segments of our population, especially in time of stress and emotion resulting from the decease of dear ones, prefer the services of funeral directors of their own ethnic or religious background. This is not due to discrimination of an odious nature. On the contrary people generally have such preferences because it is part of human nature for people, in times of stress, to seek the help of those they know best. See Jacques v. Zoning Board of Review, 64 R.I. 284.
Moreover it is well known that funeral homes serve not only the immediate family of the deceased, but also serve the convenience of relatives, friends, neighbors, fellow workers and associates of both the deceased and his immediate family who might desire to attend the funeral services and express their sympathy, regardless of the ethnic or religious background of the deceased. In our opinion the finding that the proposed use would serve the public convenience and welfare is not restricted to the convenience and welfare of any particular segment of the population of the city of Cranston. See Fratantuono v. Zoning Board of Review, 90 R.I. 449, 159 A.2d 378.
Whether the public interest required the location of the proposed use on the lot in question was for the board to determine in the first instance. It was incumbent on the applicant to prove to the board that such was the case. Fratantuono v. Zoning Board of Review, supra. He obviously succeeded in such proof. On the record before us we cannot say that said finding is not supported by competent evidence.
After making such finding the board clearly had the power under sec. 27 B (8) to grant a special exception in any district for any use or building which it deemed to be in harmony with the character of the neighborhood and appropriate to the uses or buildings authorized in such districts. Hazen v. Zoning Board of Review, supra. The question remains whether its finding that the proposed use would be in harmony with the character of the neighborhood and appropriate to the uses or buildings authorized in apartment house and dwelling house districts is supported by competent evidence.
As we have already stated, the board noted in its decision the general character of the area in question and described the uses found therein. It is also presumed to have knowledge of the other uses permitted in said districts by the ordinance. Perrier v. Board of Appeals, supra. In an apartment house district these include apartment houses, hotels, dormitories, rooming houses, philanthropic or eleemosynary institutions, and hospitals or sanitaria other than for the insane or feeble-minded.
The uses permitted in a dwelling house district include, among others, dwellings, churches, schools, colleges, public libraries, public museums, community buildings, telegraph exchange buildings, public parks, public playgrounds, public recreation buildings, school or college stadia or athletic fields, golf courses, water supply reservoirs, and railway passenger stations. There is evidence in the record supporting the board's findings that the proposed use would be in *595 harmony with the character of the neighborhood and appropriate to the uses or buildings therein authorized. In view of the uses permitted in said districts under chap. 31, secs. 3 and 4, of the ordinance we cannot say that the board's findings on this issue were arbitrary or unreasonable. It is our opinion therefore that the board did not abuse its discretion in granting a special exception under sec. 27 B (8). See Harrison v. Zoning Board of Review, 74 R.I. 135.
Inasmuch as we have already found that the granting of the exception under sec. 27 B (8) is lawful, we do not deem it necessary to consider the board's action under sec. 27 B (9).
We come finally to the petitioners' contention that the board abused its discretion in granting a special exception in the absence of evidence of "arbitrary effects" which would flow from a literal enforcement of the terms of the ordinance. In our opinion this contention is without merit. There is nothing in the enabling act or the ordinance requiring such proof. The ordinance, as it stands, must be applied in passing upon the question whether the board has abused its discretion in granting an exception under it. Harrison v. Zoning Board of Review, supra.
The petition for certiorari is denied and dismissed, the decision of the respondent board is affirmed, and the writ heretofore issued is quashed. The records in the case which have been certified to this court are ordered sent back to the respondent board.
ROBERTS, J., concurs in the result.
FROST, J., dissenting.
I am unable to agree with the majority in this case and will state my reasons therefor.
The identical question here presented was before us two years ago in Budlong v. Zoning Board of Review, 89 R.I. 431, 153 A.2d 127, at which time the decision of the board granting the application for an exception was quashed. At the last hearing the evidence presented by these petitioners and other remonstrants was substantially the same as that before the board on the first hearing. In addition, there was evidence from funeral directors in the city of Cranston that the requirements of those who need their services were being fully met and that their facilities were greater than the needs of the public generally.
When the applicant was asked the general area to be serviced, he replied, "Dean Estates, Woodridge, South Elmwood * * * Garden City" and "Friendly Community." He also introduced more than 150 petitions each containing a signature of a resident of Cranston with the signer's address below the following paragraphs:
"The undersigned, a resident of the City of Cranston, is a member of a family heretofore served by the Thomas Gattone & Son Funeral Home, from its present location at 334 Broadway, Providence, R.I., a substantial number of my relatives and friends and acquaintances are also residents of the City of Cranston.
"My family has been a client of The Thomas Gattone & Son Funeral Home, and, in case of future need would look to it for serving such need.
"It would serve the convenience and welfare of the undersigned and my relatives and friends in Cranston, if a Thomas Gattone & Son Funeral Home were located in Cranston at 594 Pontiac Avenue."
In my judgment these numerous petitions, while perhaps a tribute to the applicant, do not tend to show a public need but, on the other hand, simply a desire to have a particular funeral director. The desires of these persons signing the petitions in the absence of a public need constitute no reason for injecting into a residential area a business, that is, a funeral home which the residents *596 in that area have twice shown they do not want. In my judgment for the board to grant an exception in the circumstances was an abuse of the board's discretion. I would quash the decision of the board.
CONDON, C.J., concurs in the dissenting opinion of Mr. Justice Frost.

ON MOTION FOR REARGUMENT.
PER CURIAM.
After our opinion in the above case was filed the petitioners, by leave of court, filed a motion for a reargument based on five grounds.
The majority have carefully considered each ground and find no merit in any of them. It would appear from the petitioners' contention in support of each ground that they are dissatisfied with the reasons upon which we based our opinion and desire to argue further that the opinion is erroneous in certain particulars which were presented at the hearing before us. Such contentions do not justify a reargument.
Under point II of their motion they refer to our use of the words "competent evidence" and contend that substantial and not competent evidence is required to sustain the decision under the ordinance. They cite certain language of the court in Costantino v. Zoning Board of Review, 74 R.I. 316, at page 324, to support their contention. However they overlook other language in the same decision at page 322, where the court said: "In the usual case if there is some evidence in the record upon which the board's decision may reasonably rest it cannot be said that they abused their discretion." (italics supplied)
Moreover, in the instant case, in considering whether there was any legal evidence in the record to support the board's decision we expressly stated: "After careful consideration it is our opinion that there is sufficient evidence to support the board's decision and that its action was not arbitrary or unreasonable." (italics supplied) Sufficient evidence means such evidence in character, weight, or amount as will legally justify the finding or action in question. In using the words "competent evidence" in the portion of the opinion referred to by the petitioners, we clearly had in mind the general finding which we had already made that there was sufficient evidence in the record to support the board's decision.
The words "competent evidence" necessarily refer back to the general finding of "sufficient evidence." In using such words, and this is implicit in our decision, we clearly intended to express our opinion that there was substantial evidence in the record to support the board's finding that the proposed use would substantially serve the public convenience.
Motion denied.