ASOCIACIÓN RESIDENTES Y AMIGOS DE LA CALLE DOCE DE OCTUBRE, INC. y Otros, demandantes y recurrentes, *v.* JUNTA DE APELACIONES SOBRE CONSTRUCCIONES Y LOTIFICACIONES y OTROS, demandados y recurridos.

*Número:* O-84-890      *Resuelto:* 22 de abril de 1985

---

328

*Daniel Martínez Oquendo,* abogado de la parte recurrente; *Raquel Escudero López,* abogada de la Administración de Reglamentos y Permisos; *Miguel A. Velázquez Rivera,* abogado del recurrido Víctor M. Torres.

El Juez Asociado Señor Rebollo López emitió la opinión del Tribunal.

Mediante resolución de fecha 9 de mayo de 1983 la Administración de Reglamentos y Permisos (A.R.P.E.) autorizó —al amparo de la subsección 54.03, inciso (5), del Reglamento de Zonificación— la remodelación y uso permanente como dispensario médico de una estructura localizada en el Núm. 408 de la Calle Doce de Octubre, Hato Rey, Puerto Rico, perteneciente dicha propiedad al Dr. Víctor M. Torres (el Doctor).

Instada apelación de dicha decisión para ante la Junta de Apelaciones sobre Construcciones y Lotificaciones (la Junta) por la Asociación de Residentes y Amigos de la Calle Doce de Octubre, Inc. (la Asociación), la Junta mediante resolución de fecha 7 de marzo de 1984 —aun cuando revocó el permiso de uso permanente concedido al Doctor por A.R.P.E. bajo la citada Sec. 54.03— le concedió al Doctor un permiso provisional por un año para operar una oficina médica vía "variación" al amparo de las disposiciones de la subsección 53.01 del referido Reglamento de Zonificación.

Inconforme con la resolución emitida por la Junta tanto el Doctor como la Asociación acudieron en revisión ante el Tribunal Superior de Puerto Rico, Sala de San Juan. Dicho foro, mediante sentencia de fecha 20 de noviembre de 1984[1] denegó el auto de revisión solicitado por la Asociación por entender, como cuestión de derecho, que la "Junta de Apelaciones estaba autorizada a considerar en apelación las circustancias especiales presentes y conceder el alivio administrativo a manera de concesión". Ello no obstante, el mismo foro emitió en relación con la solicitud de revisión radicada por el Doctor[2] una orden concediéndole término tanto a la Asociación como a la Junta para que mostraran causa por la cual la resolución emitida por esta última no debía ser revocada o modificada.[3]

El recurso ante nuestra consideración tiene su origen en la solicitud de *certiorari* que radicara la Asociación ante este Tribunal en revisión de la citada sentencia de fecha 20 de noviembre de 1984 emitida por el foro de instancia. Mediante la utilización del mecanismo de mostración de causa le concedimos término tanto a A.R.P.E. como al Doctor para que

[1] Sentencia emitida en el Caso Civil Núm. 84-5155 (907), Hon. Peter Ortiz, Juez.

[2] Caso Civil Núm. 84-5122 (907), Hon. Peter Ortiz, Juez.

[3] Dicho caso se encuentra pendiente de resolución final ante el foro de instancia.

expresaran su posición respecto a la sentencia emitida. Han comparecido. Estando en condiciones de resolver el recurso, procedemos a así hacerlo.

## I

La cabal y mejor comprensión de la decisión que se emite en el presente caso requiere que hagamos una detallada exposición de los hechos que dieron lugar al mismo.

Allá para el mes de noviembre de 1981 el Doctor adquirió por compra una casa y solar localizado en el Núm. 408 de la Calle Doce de Octubre, Hato Rey, Puerto Rico. Dicha propiedad, hasta el momento de ser adquirida por el Doctor, era una dedicada a uso residencial que tenía la particularidad de que "su frente" daba hacia la mencionada Calle Doce de Octubre mientras que la parte posterior de la misma colindaba con la Avenida De Hostos. La referida propiedad está ubicada dentro de los límites de un distrito residencial (R-3), ello según el Mapa de Zonificación del sector de Río Piedras, vigente, situación de la cual tenía conocimiento el Doctor al adquirir la misma.

Luego de adquirido el inmueble, el Doctor comenzó a remodelar la parte *interior* de la estructura existente con el propósito de habilitar el mismo a los efectos de proveer dos (2) oficinas de consulta, cinco (5) salas de exámenes, una (1) sala para realizar cirugía menor, un (1) laboratorio especializado y una (1) sala de espera, todo ello relacionado con la práctica de la dermatología. Dicha remodelación se comenzó a llevar a cabo sin haberse solicitado autorización alguna de los organismos administrativos correspondientes por razón de que, alegadamente, se desconocía que ello fuera necesario.

De todas formas, con fecha de 6 de octubre de 1982, el Doctor radicó ante A.R.P.E. una solicitud de remodelación y uso permanente de la propiedad como "dispensario médico". Según el permiso de construcción solicitado, la "fachada" y

uso del inmueble sería invertido; esto es, la entrada y fachada principal —comercial— de la estructura sería por la Avenida De Hostos mientras que la parte de la misma que da hacia la Calle Doce de Octubre se convertiría en la parte trasera de la propiedad, manteniéndose en ésta una fachada residencial. Por último, resulta procedente señalar que a pesar de que la mayoría de las propiedades localizadas en la Calle Doce de Octubre son dedicadas a vivienda, en el sector de Hato Rey donde se encuentra ubicada la misma([4]) hay un gran número de oficinas profesionales de médicos establecidas, entre ellas varias dedicadas a la práctica de la dermatología.

## II

[1] De un estudio del historial legislativo de la Ley Núm. 76 de 24 de junio de 1975 —Ley Orgánica de A.R.P.E.— surge que la intención del legislador al aprobar dicha Ley fue la de trasladar las funciones de la Junta de Planificación respecto a la aplicación de los reglamentos en casos individuales y la concesión de permisos de construcción al nuevo organismo administrativo creado.([5]) Ello nos llevó a resolver que en virtud de la citada Ley "se adoptó un nuevo esquema administrativo mediante el cual se transfirió a A.R.P.E. las funciones operacionales que hasta entonces desempeñaba la Junta de Planificación y se confirió a este nuevo organismo la facultad de aplicar y velar por el cumplimiento de las leyes y reglamentos de planificación". *Junta de Planificación* v. *J.A.C.L.*, 109 D.P.R. 210, 214 (1979).

■ Bajo ese "nuevo esquema administrativo" es claro que le correspondía a A.R.P.E., en primera instancia, el decidir sobre la solicitud que hiciera el Doctor de establecer un

---

([4])Dicho "sector" comprende las Avenidas De Hostos y Domenech y la Calle O'Neill.

([5])Véase el Informe de las Comisiones de Gobierno y Desarrollo Socioeconómico del Senado de Puerto Rico sobre el P. del S. 1075, archivo de Secretaría del Senado, 21 de marzo de 1975, pág. 2.

"dispensario médico" en una zona residencial clasificada R-3. Como bien señala la representación legal del Doctor en su comparecencia para mostrar causa, A.R.P.E. podía —de entenderlo procedente y dependiendo de los hechos que encontrara probados— conceder la autorización de lo solicitado por el Doctor bajo uno de dos métodos: *1–* vía "excepción o autorización directa", al amparo de lo dispuesto por la citada subsección 54.03, inciso (5), del Reglamento de Zonificación, o *2–* autorizando una "variación", a la luz de lo dispuesto en la subsección 53.01 del referido reglamento.

En *Quevedo Segarra* v. *J.A.C.L.*, 102 D.P.R. 87, 92, 93 (1974) *"definimos el término 'variación' como el permiso para dedicar la propiedad a un uso prohibido* por las restricciones impuestas en una zona o distrito, y, *las excepciones,* como la autorización para usar la propiedad en cierto modo *que de antemano el propio Reglamento de Zonificación admite y tolera,* siempre que se cumpla con ciertas condiciones". (Énfasis suplido.) Expresamos en dicho caso, en adición, que la variación tiene el propósito de atenuar en ciertos casos el rigor del Reglamento, "permitiendo el uso prohibido cuando se demuestra que debido a las circunstancias especiales la aplicación de las restricciones puede resultar irrazonable y ocasionar perjuicios al dueño"; que, por otro lado, la concesión de excepciones "es un medio para controlar ciertos usos que no son frecuentes pero que pueden tener un efecto adverso en el vecindario" y que las mismas se "conceden únicamente en los casos expresamente autorizados por el Reglamento y siempre sujeto a las condiciones en él prescritas".

En el presente caso, A.R.P.E. entendió a base de la prueba presentada, que a pesar de que la "actividad" a que pretende el Doctor dedicar la propiedad es una, de ordinario, no permitida en un distrito residencial R-3, procedía conceder lo solicitado *vía excepción* al amparo de las disposiciones de la

subsección 54.03 por cuanto se cumplía con todas las cuatro condiciones requeridas por el inciso (5) de la misma. ([6])

██ Dicha decisión merece gran deferencia por cuanto debemos recordar que en "la concesión de variaciones y excepciones entran en juego factores técnicos y complejos, cuya evaluación requiere estudios y conocimientos especializados" y que A.R.P.E., como sucesora en los aspectos antes mencionados de la Junta de Planificación en virtud de las disposiciones de la antes citada Ley Núm. 76 de 1975, "cuenta con el personal profesional y los recursos técnicos necesarios para llevar a cabo esta evaluación". Véase *Quevedo Segarra* v. *J.A.C.L.*, ante, pág. 95.

---

([6]) 54.03–*Otros Usos a Permitirse por la Junta* [A.R.P.E.] *en Distritos Residenciales*

La Junta [A.R.P.E.] podrá considerar en armonía con los fines y propósitos generales de este Reglamento y en aquellos distritos residenciales donde específicamente se establece en esta Subsección, consultas de ubicación y de uso de terrenos cuando se trate de proyectos relacionados con los usos que más adelante se indican, siempre que por medio del diseño, la construcción y la operación, se haya de proteger la salud, la seguridad y el bienestar de los ocupantes de la propiedad a ocuparse o a usarse o de las propiedades limítrofes, y que no se menoscabe el suministro de luz y aire a la edificación a ocuparse o a usarse, o a las propiedades vecinas, o se aumente el peligro de: fuego, o se ocasione reducción o perjuicio a los valores de las propiedades establecidas en las áreas vecinas, y siempre que estos proyectos reúnan cualquier otro requisito que se estime conveniente para asegurar la debida protección al interés público y cumplan con los demás requisitos establecidos para el distrito específico en que ubiquen. En estos casos la Junta [A.R.P.E.] podrá requerir cualquier otra información que determine se hace necesaria para considerar el proyecto.

"(5)–*Dispensarios médicos en cualquier Distrito Residencial excepto Distritos R-O, de acuerdo con lo siguiente:*

"(a)–El servicio a prestarse será para pacientes externos. El tratamiento de dementes o enfermedades contagiosas no será permitido.

"(b)–No se darán características comerciales a la edificación.

"(c)–No se operará ningún equipo o instrumento médico que pueda resultar perjudicial al bienestar de los residentes del sector.

"(d)–En desarrollos residenciales en los cuales se estableció un centro de vecindad en cumplimiento con lo establecido en el Reglamento sobre Facilidades Vecinales (Reglamento de Planificación Núm. 9), los dispensarios médicos se permitirán solamente en dicho centro de vecindad." Anejo Núm. 2, págs. 4-5.

La Junta de Apelaciones, por su parte, determinó que no procedía la concesión de una "excepción" bajo la citada subsección 54.03, inciso (5), del Reglamento de Zonificación por cuanto entiende —sin citar autoridad alguna en apoyo de ello— que la "actividad" del Doctor no cualifica como "dispensario médico".([7]) No obstante ello, le concedió al Doctor un "permiso de carácter temporero por el término de un año, para uso de oficina médica" por entender que procedía la autorización de un alivio administrativo a manera de concesión o variación.

Somos del criterio que, de ser correcto el argumento esgrimido por la Junta a los efectos de que la oficina en controversia no cualifica como dispensario médico, la solicitud del Doctor tendría que ser denegada en su totalidad por cuanto la concesión de una "variación", dados los hechos particulares del caso, es obviamente improcedente en derecho. Ello es así por cuanto al momento en que el Doctor compra la propiedad en controversia él tenía pleno conocimiento de las limitaciones de uso. Bajo estas condiciones es claro que está impedido de solicitar —y de que se le conceda— un alivio administrativo vía variación. En otras palabras, como correctamente señala el propio Doctor en su comparecencia para mostrar causa "no debe premiarse a aquél que se autoinfligió el perjuicio". Véanse: R. M. Anderson, *American Law of Zoning*, 2da ed., New York, Lawyers' Co-operative Pub. Co., 1976, Vol. III, Secs. 18.42, 18.43; D. G. Hagman, *Urban Planning and Land Development Control Law*, St. Paul, Minn., West Pub. Co., 1975, pág. 204.

---

([7]) La Junta de Apelaciones entiende que un dispensario médico "es una facilidad médica de carácter central donde se brindan servicios médicos ambulatorios para cubrir las necesidades de salud de una comunidad en general, en la cual prestan sus servicios profesionales *varios médicos* de diferentes especialidades, entiéndase rama de la medicina. Dicho uso contrasta con una 'oficina o consultorio médico', donde generalmente trabaja un solo médico o se dedican a una rama de la medicina como en el presente". (Énfasis en el original.) Ibíd., pág. 5.

Ahora bien, ¿cumple la "actividad" pretendida por el Doctor con el concepto de "dispensario médico" contenido en el antes transcrito inciso (5) del Reglamento de Zonificación? Ni la ley ni el reglamento definen dicho término. En este aspecto coincidimos con el argumento esgrimido por A.R.P.E. en su comparecencia para mostrar causa. Lo pretendido por el Doctor es un *término medio* entre la oficina médica normal y corriente —donde sólo se examina, se diagnostica y se receta— y el concepto *abarcador* que contempla la Junta de lo que es un dispensario médico, esto es, una "facilidad de carácter central donde se brindan servicios médicos ambulatorios para cubrir las necesidades de salud de una comunidad en general, en la cual prestan sus servicios profesionales varios médicos de diferentes especialidades".

■ En el presente caso, la "actividad" pretendida, aun cuando no cumple con la definición abarcadora de la Junta, no se limita al mero examen, diagnóstico y prescripción de medicinas. Como hemos visto, la misma cuenta con un laboratorio especializado, una sala especialmente equipada para llevar a cabo cirugía menor, dos (2) oficinas de consulta y cinco (5) salas de exámenes. Podemos catalogar el mismo con un "dispensario médico especializado". Somos del criterio, en consecuencia, que una oficina o consultorio médico de esta naturaleza cualifica como un "dispensario médico" a los fines de lo dispuesto por la subsección 54.03, inciso (5), del Reglamento de Zonificación. Es correcta desde ese punto de vista, repetimos, la decisión que a esos efectos emitiera A.R.P.E.

■ No obstante lo anteriormente expresado, un examen de la decisión emitida por A.R.P.E. en el presente caso revela que este organismo no hizo una determinación específica sobre el punto principal o neurálgico del caso; esto es, sobre cómo se beneficia o se afecta, si en algo, el "interés público" y el "interés del vecindario" por el establecimiento en dicha propiedad de este "dispensario médico" solicitado por el Doctor.

Dicha determinación no sólo es de suprema importancia, sino que es mandatoria en esta clase de casos en que el referido organismo administrativo autoriza o deniega una "excepción". Como expresáramos en *Quevedo Segarra* v. *J.A.C.L.*, ante, págs. 93–94, "lo importante en la concesión de éstas [las excepciones] es restringir y controlar *ciertos usos* que pueden resultar *adversos al carácter del vecindario*, aunque no necesariamente incompatibles. . . . *Por eso, tiene primacía en la concesión el interés público y el interés del vecindario en particular sobre el interés del dueño del terreno"*. (Énfasis suplido y citas omitidas.)

■ Al hacer dicha determinación, el foro administrativo deberá tomar en consideración, *entre otros*, factores tales como: *1* – la *necesidad* que tenga el vecindario en particular de la "actividad" que se pretende establecer; en otras palabras, en el presente caso debe tomarse en consideración si en el vecindario o sector existen otras oficinas de médicos que brindan servicios similares a los que ofrece el Doctor, y la cercanía o no de hospitales que brindan servicios médicos, generales o especializados a la ciudadanía en general. C. A. Rathkopf, *The Law of Zoning and Planning*, 4ta ed., New York, C. Boardman Co., Ltd., 1975, Sec. 41.09; E. C. Yokley, *Zoning Law and Practice*, 4ta ed., Charlottesville, Virginia, Michie Co. L. Pubs., 1978, Sec. 7-23; *2* – la *conveniencia* de la "actividad" para el vecindario o sector en particular, ([8]) desde el punto de vista que la misma no resulte adversa a la salud, moral, seguridad y bienestar público del vecindario. *Budlong* v. *Zoning Board of Review of Cranston*, 153 A.2d 127 (1959); *3* – la característica particular del vecindario en controversia, desde el punto de vista de la "cualidad de vida y estética" del mismo. R. H. Nelson, *Zoning and Property Rights*, Cambridge, Mass., M.I.T. Press, 1977; *Village*

---

([8]) Manteniendo siempre presente que lo conveniente puede no ser necesario y viceversa.

*of Belle Terre* v. *Boraas*, 416 U.S. 1, 9 (1974); *Berman* v. *Parker*, 348 U.S. 26, 33 (1954); *4* – la no deseabilidad de la concentración de facilidades similares en un mismo sector. Rathkopf, *The Law of Zoning and Planning, op. cit.*, Sec. 41.54; *5* – el tráfico vehicular y ruido que generará la actividad solicitada, N. Williams, *American Land Planning Law and the Police Power*, Chicago, Callaghan & Co., 1974, Secs. 82.02, 82.04; y *6* – si el carácter específico del vecindario en particular amerita un tratamiento distinto al del sector en general. Rathkopf, *The Law of Zoning and Planning, op. cit.*, Sec. 6.07(1). Procede, en consecuencia, devolver el presente caso(⁹) a A.R.P.E. para que dicho foro administrativo realice, previo los procedimientos que estime necesarios, la determinación específica anteriormente señalada.

Por los fundamentos expresados, *se expide el auto, y se dicta sentencia revocatoria de la dictada en el presente caso por el Tribunal Superior de Puerto Rico, Sala de San Juan, y se devuelve el mismo a dicho foro para procedimientos ulteriores compatibles con lo aquí expresado.*

---

(⁹) El tribunal de instancia deberá tomar las medidas necesarias, compatibles con lo aquí resuelto, en relación con el Caso Civil Núm. 84-5122 (907) aún pendiente ante dicho foro.