DECISION
Cheryl Dowdell (Dowdell), Appellant, challenges the decision of the Zoning Board of Review of the Town of Charlestown (Board), granting a dimensional variance to her neighbor, Peter Bloomquist (Bloomquist). The Board granted Bloomquist's application for a variance to construct an addition to his single family residence. This Court has jurisdiction pursuant to G.L. 1956 § 45-24-69.
 FACTS AND TRAVEL
Bloomquist owns property located in Charlestown at 17 Cherokee Bend and designated as Lot 196 on Assessor's Map 23. The subject building is 28 by 46 feet and is situated on a 42,060 square foot lot. (Application for Dimensional Variance. 10/26/00). The house was constructed 52 feet 34 inches from the rear property line. (Tr. 12/19/01 at 5). The current ordinance requires a sixty foot rear line setback. (See Town of Charlestown Zoning Ordinance, Table 32.1. Dimensional Regulations).
The record does not include evidence of the setback requirements in effect in 1981 when the house was constructed by Bloomquist's parents. (Tr. 12/19/00 at 17-18). Additionally, the Court cannot determine from the record whether Bloomquist's parents obtained a dimensional variance before situating the house fewer than sixty feet from the rear property line.
Bloomquist seeks a dimensional variance to build a 28 by 28 foot addition to the top of his home. On December 19, 2000, he petitioned the Board for an eight foot dimensional variance. The Board considered his application on December 19, 2000; February 20, 2001; April 17, 2001; April 19, 2001; May 15, 2001; and June 19, 2001. At the hearings, the Board heard testimony from several witnesses, including Bloomquist and abutting landowners, Dowdell and her husband, William, (W. Dowdell) a professional engineer. On June 21, 2001, the Board filed its written decision granting the application. It is from that decision that Dowdell takes her appeal.
Dowdell disputes Bloomquist's contention that denying his petition would result in more than a mere inconvenience and that he has no other reasonable alternative but to obtain the relief sought. Dowdell also argues that the Board should not have considered the application before determining whether the property when constructed complied with then-existing rear line setback requirements. She contends that because Bloomquist is not entitled to expand an illegal use, the Board must consider the issue before granting his application. Dowdell also presents the related argument that if the house was illegal when built, then its owner created the hardship and should not be permitted to petition the Board for a variance.
The Board refused to consider the issue of whether the building met existing rear line setback requirements when constructed. It proceeded to consider the application in accordance with the standards set forth in Sciacca v. Caruso, 769 A.2d 578, 583 (R.I. 2001)[1].
During the hearings, Bloomquist testified that he requested the variance because his home was too small to meet his family's needs. He also noted that his house was substantially smaller than the rest of the homes in his neighborhood. (Tr. 5/15/01 at 20).
W. Dowdell, a professional engineer, testified in opposition to the application. He proposed four alternatives to Bloomquist's proposal, none of which would block Dowdells' water view. (Tr. 5/15/01 at 69-70). Bloomquist rejected W. Dowdell's proposals because they would interfere either with his garage or his septic system or would further encroach on his setbacks. (Tr. 5/15/01 at 105-06). Bloomquist contends that the only feasible option for enlarging his home would be to expand upwards. (Tr. 5/15/01 at 22). The Board agreed.
On June 19, 2001, the Board met and voted to approve the variance. In its written decision, the Board found that denying the application "would result in more than a mere inconvenience and that there is no other reasonable alternative." (Board Decision at 1). Dowdell filed a timely appeal. On appeal, Dowdell raises the following issues: first, that Bloomquist did not satisfy his burden to the Board that there was no reasonable alternative to the relief sought; second, that the Board erred by granting the application without first considering whether the existing structure conformed to the town ordinance in effect when it was constructed. Dowdell argues that the Board should have considered this issue as a threshold question because an owner cannot expand an illegal use and also because an applicant cannot benefit from a hardship that he/she created.
 STANDARD OF REVIEW
The review of a zoning board of review's decision is controlled by G.L. 1956 § 45-24-69(d), which provides that the Superior Court
 "shall not substitute its judgment for that of the zoning board of review as to the weight of the evidence on questions of fact. The court may affirm the decision of the zoning board of review or remand the case for further proceedings, or may reverse or modify the decision if substantial rights of the appellant have been prejudiced because of findings, inferences, conclusions, or decisions which are:
 (1) In violation of constitutional, statutory, or ordinance provisions;
 (2) In excess of the authority granted to the zoning board of review by statute or ordinance;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion." G.L. § 45-24-69(d).
When reviewing the decision of a zoning board of review, this Court "must examine the entire record to determine whether `substantial' evidence exists to support the board's findings." Salve Regina Collegev. Zoning Bd. Of Rev., 594 A.2d 878, 880 (R.I. 1991) (citing DeStefanov. Zoning Bd. Of Review of Warwick, 122 R.I. 241, 245, 405 A.2d 1167, 1170 (1979)). "Substantial evidence as used in this context means such relevant evidence that a reasonable mind might accept as adequate to support a conclusion, and means in amount more than a scintilla but less than preponderance." Caswell v. George Sherman Sand and Gravel Co.,Inc., 424 A.2d 646, 647 (R.I. 1981 (citing Apostolou v. Genovesi,120 R.I. 501, 507, 388 A.2d 821, 825 (1978)). "Moreover, `the reviewing court is not empowered to substitute its judgment for that of the zoning board if it can conscientiously find that the board's decision was supported by substantial evidence in the whole record.'" Mendosa v.Corey, 495 A.2d 257, 260 (R.I. 1985) (quoting Apostolou v. Genovesi,120 R.I. 501, 509, 338 A.2d 821, 825 (1978)).
 LEGAL STATUS OF THE PROPERTY
Dowdell contends that the Board erred by hearing the application without determining whether the house conformed to the applicable zoning ordinance at the time of construction. Dowdell contends that if the building was illegal when constructed, then the Board must deny the application because a property owner cannot expand an illegal use, and an applicant cannot benefit from a hardship that he or she created.
Dowdell received notice of Bloomquist's application when it was filed. (Application for Dimensional Variance. 10/26/00). She raised the issue of the legal status of the structure at the first hearing before the Board on December 19, 2000. (Tr. 12/19/00 at 20). On February 20, 2001, she raised the issue again through her attorney. (Tr. 2/20/01 at 6).
Before determining the application, one Board member inquired as to whether the Board should address "the legality of this dwelling and all the previous rulings that were made by building officials." (Tr. 6/19/01 at 4). Counsel for the Board recommended against deciding that issue. (Tr. 6/19/01 at 5). Following that advice, the Board decided the application without determining whether the house conformed to the applicable ordinance when it was constructed.
The current ordinance requires a rear line setback to be at least 60 feet. (See Town of Charlestown Zoning Ordinance, Table 32.1 Dimensional Regulations). Bloomquist's house has a rear line setback of only 52 feet and 34 inches. If the ordinance in effect when the property was constructed permitted less than a sixty foot rear line setback, then the property may be considered nonconforming. The town ordinance provides that
 "[a] lot with lesser amounts than required in § 218-32, Dimensional regulations, may be considered as nonconforming
 Such lot must have been shown on a legally recorded plat or deed before the effective date of this Ordinance, and did not adjoin other land of the same owner, and met all the requirements of the zoning ordinance in effect at the time of its creation. The zoning district dimensional requirements and setbacks in effect when the lots were created shall be used." Charlestown Zoning Ordinance, Article VI, § 218-33(A)(1) (2001) (emphasis added).
Section 45-24-31(49) of the Rhode Island General Laws defines a nonconforming use as
 "[a] building, structure, or parcel of land, or use thereof, lawfully existing at the time of the adoption or amendment of a zoning ordinance and not in conformity with the provisions of that ordinance or amendment.
 Nonconformance is of only two (2) types: . . .
 (ii) Nonconforming by dimension: a building, structure, or parcel of land not in compliance with the dimensional regulations of the zoning ordinance. Dimensional regulations include all regulations of the zoning ordinance, other than those pertaining to the permitted uses. A building or structure containing more dwelling units than are permitted by the use regulations of a zoning ordinance is nonconforming by use; a building or structure containing a permitted number of dwelling units by the use regulations of the zoning ordinance, but not meeting the lot area per dwelling unit regulations, is nonconforming by dimension. G.L. § 45-24-31(49) (emphasis added).
The Board did not consider whether Bloomquist's property qualified as a nonconforming use. Likewise, the Board did not consider whether Bloomquist's predecessor in title had obtained a dimensional variance when the house was first constructed to relax the rear line setback requirements to allow for the enjoyment of a legally permitted use. The Board assumed that the structure was legal and considered the application without regard to Dowdell's allegation that the property might be illegal.
Dowdell further argues that once she raised the issue of whether the property was illegal when constructed, the Board should have delayed consideration of the merits of Bloomquist's application. Dowdell suggests that the Board should have redirected its inquiry from the application for a dimensional variance to a look-back to determine whether a building constructed years earlier met legal requirements when built.
It is well settled that "[t]he law recognizes that there is a presumption that administrative boards, such as zoning boards, will act fairly and with proper motives, and for valid reasons, in granting exceptions and variances." E.C. Yokely, Zoning Law Practice, § 25-3 (4th ed. 1979). Our Supreme Court has likened zoning boards to "other public bodies" and has "presume[d] that [a zoning board's] official actions were properly performed." Wyss v. Zoning Bd. of Reviewof City of Warwick, 99 R.I. 562, 565, 209 A.2d 22, 227 (R.I. 1965). Such a "presumption carries with it an assumption that the [zoning] board found that the facts prerequisite to the grant of [relief] existed and that it applied correct standards in reaching its conclusion." Id.
Furthermore, the doctrine of administrative finality, which promotes the "principle that persons affected by a decision in zoning matters ought not to be twice vexed for the same cause and are entitled to have their rights and liabilities settled by a single decision upon which reliance may be placed," imposes closure on an unappealed zoning board decision.Marks v. Zoning Board of Review of City of Providence, 98 R.I. 405, 406,203 A.2d 761, 763 (R.I. 1964).
Consequently, a zoning board must presume that all prior controversies have been resolved fairly and properly. The Board possesses jurisdiction to act on the application properly before it and may not resurrect issues that should have been raised and determined in other proceedings. The Board correctly assumed that all prior issues as to the use of the property had been resolved when the property was built and first occupied. Bloomquist's burden before the Board was to demonstrate that he was entitled to the relief — a dimensional variance — he had requested on his application. See Bernuth v. Zoning Bd. of Review of Townof New Shoreham, 770 A.2d 396 (R.I. 2001). Thus, the Board here was required to "prescind from the wisdom of previous exception or variances," Sewell v. Zoning Bd. of Review of Barrington, 93 R.I. 109, 114, 172 A.2d 81, 84 (1961), and to focus on whether the Bloomquist met his "burden of proof for a dimensional variance." See generally, Sako v.Delsesto, 688 A.2d 1296, 1298 (R.I. 1997) (the petitioners must "amply satisfy[y] this burden of proof").
Now, Dowdell's general burden on appeal of the Board's decision granting the variance is to demonstrate to this Court, acting in its appellate capacity, that the Board's decision was "not supported by legal evidence and [is] so arbitrary and unreasonable as to show a clear abuse of discretion." Budlong v. Zoning Bd. of Review of City of Cranston,93 R.I. 199, 205, 172 A.2d 590, 593 (R.I. 1961). "The burden of showing such an abuse of discretion is on those who seek to reverse a decision of a zoning board, " here Dowdell. Id. (citing Perrier v. Board of Appeals,86 R.I. 138, 134 A.2d 141).
If Dowdell wished to pursue the issue of illegal use, she should have filed a Declaratory Judgment Action in the Superior Court. She might have sought a stay from the Court to preclude the Board from acting on the application until she had an opportunity to adjudicate the issue. She had ample opportunity to file such a court action. Dowdell received notice of Bloomquist's application over seven months before it was decided. She appeared at a Board hearing and raised the issue six months before the Board decided the application.
The Board, on the application before it, was without authority to determine the issue of whether the structure qualified as a nonconforming use in conjunction with deciding an application for a dimensional variance. In the case of RICO Corp. v. The Town of Exeter, 787 A.2d 1136
(R.I. 2001), the Court held that a zoning board lacks subject matter jurisdiction to determine the existence of a nonconforming use. The Court explained:
 `"[z]oning boards are statutory bodies. Their powers are legislatively delineated. They are empowered to hear appeals from the determinations of administrative officers made in the enforcement of the zoning laws and in addition they may authorize deviations from the comprehensive plan by granting exceptions to or variations in the application of the terms of local zoning ordinances. . . . Notwithstanding that the enabling legislation does not permit nor the ordinance authorize any additional jurisdiction, the respondent board by purporting to confirm the legality of a pre-existing use in substance assumed to itself the power to issue declaratory judgments."' Id. at 1144 (citing Olean v. Zoning Board of Review of Lincoln, 101 R.I. 50, 52, 220 A.2d 177, 178 (1966)).
An applicant is "precluded on a petition for a variance or exception from asserting a claim of right to a nonconforming use." Zuena v. ZoningBd. of Cranston, 102 R.I. 399, 300, 229 A.2d 846 (R.I. 1967). Such an application by "its very nature precludes the assertion thereunder of any claim of right to a nonconforming use." Winters v. Zoning Bd. of Reviewof City of Warwick, 80 R.I. 275, 279, 96 A.2d 337, 339 (1953). In contrast, "an application to a building inspector [rather than a request for relief to the zoning board] for permission to build is based upon the applicant's claim of a legal right to erect a proposed building upon his land . . . If the landowner's application is denied, he may then appeal; and his appeal carries his claim of right before the Zoning Board of Review." Heffernan v. Zoning Board of Review, 142 A. 479, 480, 49 R.I. 283, 286 (R.I. 1928).
The Enabling Act does not give the Board authority to determine the legality of a pre-existing use when considering a petition for a dimensional variance. Had the matter reached the Board on appeal from a building official's denial of a building permit, the Board would have been the appropriate body to consider the issue. However, when the issue is raised in the context of a hearing on an application for a dimensional variance, the Board lacks authority to consider such challenge.
Finally, an abutting landowner should not be permitted to sidetrack a neighbor's application for a variance by raising an issue unrelated to the relief sought on the application. The applicable statutory and case law sets forth the standard by which a zoning board of review should determine an application for dimensional variance. "[T]o obtain a dimensional variance, the applicant must satisfy the zoning board `that the hardship suffered by the owner of the subject property is the dimensional variance if not granted amounts to more than a mere inconvenience, which means that there is no other reasonable alternative to enjoy a legally permitted beneficial use of ones property.'" Sciacca,
769 A.2d at 583 (citing G.L. § 45-24-41(d)(2)).
Dowdell seeks to increase Bloomquist's burden beyond the aforementioned standard. To accept Dowdell's position, the Court would be opening Pandora's Box by encouraging other abutting landowners to obstruct valid applications for dimensional variances possibly for reasons of delay. It would be unfair to require an applicant to revisit a determination made two decades earlier and unfair to require the Board to engage in a fact finding mission unrelated to the application before it.
The Court finds that the Board's refusal to consider the issue of whether the building was legal when constructed was not in violation of statutory or ordinance provisions. The Board was without authority to determine that issue in the context of considering an application for a dimensional variance. Dowdell, the party raising the issue of non-conformance had the burden of proving it. See RICO Corp., 787 A.2d at 1136. During the months after receiving notice until the Board decided the application herein, Dowdell had ample opportunity to file a Declaratory Judgment Action in the Superior Court to obtain a determination as to the legality of the structure. Abutting landowners should not be permitted to place unreasonable obstructions in the path of those who have filed applications for a dimensional variance. Accordingly, the Board did not err or abuse its discretion by deciding Bloomquist's application pursuant to the standards for a dimensional variance.
 DIMENSIONAL VARIANCE
Dowdell further contends that the Board erred in granting Bloomquist's application for a dimensional variance. Dowdell avers that Bloomquist failed to satisfy the standards set forth in applicable statutory and case law for a dimensional variance.
Rhode Island General Laws § 45-24-41(c) provides the requirements for obtaining a dimensional variance. The law states:
 (c) In granting a variance, the zoning board of review requires that evidence to the satisfaction of the following standards is entered into the record of the proceedings:
 (1) That the hardship from which the applicant seeks relief is due to the unique characteristics of the subject land or structure and not to the general characteristics of the surrounding area; and is not due to a physical or economic disability of the applicant, excepting those physical disabilities addressed in section 45-24-30(16);
 (2) That the hardship is not the result of any prior action of the applicant and does not result primarily from the desire of the applicant to realize greater financial gain;
 (3) That the granting of the requested variance will not alter the general character of the surrounding area or impair the intent or purpose of the zoning ordinance or the comprehensive plan upon which the ordinance is based; and
 (4) That the relief to be granted is the least relief necessary. G.L. § 45-24-41(c).
At the time of the hearing, "to obtain a dimensional variance, the applicant was required to prove `that the hardship suffered by the owner of the subject property is the dimensional variance if not granted amounts to more than a mere inconvenience, which means that there is noother reasonable alternative to enjoy a legally permitted beneficial useof ones property.'" Sciacca, 769 A.2d at 583 (citing G.L. §45-24-41(d)(2) (emphasis added)). An applicant seeking a dimensional variance bears the burden of proving that "no reasonable alternative" exists. See Von Bernuth v. Zoning Board of Review of the Town of NewShoreham, 770 A.2d 396, 401 (R.I. 2001).
Dowdell asserts that there were reasonable alternatives available to Bloomquist. She relies on the testimony of her husband, W. Dowdell, who prepared and presented four alternative proposals. W. Dowdell's first alternative proposed a 28 by 28 foot addition off of the southwest corner of the house. (Tr. 5/15/01 at 69). His second proposal took the same addition and moved it to the rear of the house, closer to the ocean. This plan would require a 72 foot setback. (Tr. 5/15/01 at 69). His third proposal provided for a slightly larger addition to southwest corner of the house, more parallel to the street. (Tr. 5/15/01 at 70). W. Dowdell's final proposal provided for a 28 by 28 foot addition to the northwest corner of Bloomquist's house. W. Dowdell claims that "all four of these alternatives . . . accomplish the goal of the Bloomquists relative to the size of the addition . . . ." (Tr. 5/15/01 at 70).
Bloomquist rejected each of W. Dowdell's alternate proposals. He stated that none of W. Dowdell's proposals were feasible because they would either interfere with the use of his driveway, would interfere with his septic system, or would require him to relocate his garage. According to Bloomquist, one of W. Dowdell's proposals actually called for an addition that would go "into the front door and [go] off the ledge of a cliff, a 40 foot drop." (Tr. 5/15/01 at 105-106). Additionally, Bloomquist rejected the possibility of an addition to the north (left) side of his house because that was the side closest to the Dowdells' house, and it was his "intention to stay as far away from their property as possible." (Tr. 5/15/01 at 22). Furthermore, he did not want to add to the rear of the house because he was already encroaching on the current rear line setback. For these reasons, Bloomquist contends that his only option was to expand upwards. (Tr. 5/15/01 at 21-22).
The Board determined that denying the Bloomquists' application would result in more than a mere inconvenience and that there were no other reasonable alternatives to his plan. The Board considered the alternatives presented to them by W. Dowdell and rejected them as ". . . unrealistic, as they did not take into consideration present configuration of the existing structure or the elevations of the lot." (Board Decision at 2). The Board granted the applicant an eight foot rear variance.
The record indicates that the Board examined the evidence presented to it and applied the then-applicable, "no reasonable alternative" standard, as enunciated in Sciacca. The Board specifically found that Bloomquist presented a specific need for the application. The Board heard, considered and rejected the alternative proposals presented by W. Dowdell. A zoning board "is vested with discretion to accept or reject the evidence presented." Bellevue Shopping Center Assoc. v. Chase,574 A.2d 760, 764 (R.I. 1990).
 CONCLUSION
After review of the entire record, including exhibits, transcripts and memoranda, this Court finds that the Board had reliable, probative and substantial evidence before it to grant the dimensional relief sought by the owner. Substantial rights of the appellant have not been prejudiced. Accordingly, the decision of the Board is affirmed.
Counsel shall submit the appropriate judgment for entry by the Court after notice.
[1] On June 28, 2002 the General Assembly repealed that portion of G.L. § 45-24-41(d), requiring the applicant to prove "that no other reasonable alternative to enjoy a legally permitted beneficial use of one's property" exists. In effect, this change reinstated the "more than a mere inconvenience" standard, otherwise known as the "Viti Standard." However, this change was not in effect at the time of the hearings before the zoning board.