JOSEPH A. HARTE *et al. vs.* ZONING BOARD OF REVIEW OF THE CITY OF CRANSTON.

AUGUST 6, 1952.

PRESENT: Flynn, C. J., Baker, Condon and O'Connell, JJ.

FLYNN, C. J.   This petition for certiorari was brought by certain remonstrants to review a decision of the zoning board of review of the city of Cranston granting an application for an exception to the zoning ordinance to permit the use of land located in a residential district for a supermarket and a parking lot.   Pursuant to the writ the pertinent records of the decision and hearing, including a transcript of evidence, have been certified to this court by the respondent board.

The record discloses the following among other facts. Samuel Leviten, hereinafter called the applicant, is a resident of Fall River, Massachusetts, and operates several supermarkets in this state.   He is presently the owner of

two separate lots numbered 129 and 68 respectively on assessor's plat No. 9, section 5, in said Cranston. He acquired lot 129 in March 1950 and lot 68 in May 1951, being informed at all times that the greater part of lot 129 and all of lot 68 were located in a residential zoning district where neither a supermarket nor a parking lot was a permitted use.

Lot 129 fronts 160 feet on the northerly side of Reservoir avenue which apparently was considered as running generally east and west. That lot extends back northerly from Reservoir avenue for a distance of 185 feet on the westerly side and about 217 feet on the easterly side and measures about 222 feet along the rear or northerly boundary. The area of lot 129 is 38,243 square feet and only the front part along Reservoir avenue for a depth of 100 feet, containing about 16,000 square feet, is zoned for business. The remainder of that lot is in a residential zone, and a one-family dwelling, which was occupied until the purchase, is located thereon.

Lot 68 in general lies immediately to the north of lot 129. Its southerly line is about 294 feet, bounding partly on the rear line of lot 129 and then continuing easterly another 71 feet to Handy avenue. The line then runs northerly along Handy avenue for a distance of about 317 feet to North Vale avenue, thence westerly along that avenue for about 202 feet to the extended rear boundary line of remonstrants' dwelling house lots located on Calaman road, and thence southerly along such boundary line for about 289 feet to the rear or northwesterly corner of lot 129. This lot has an area of 77,810 square feet, has no buildings whatever, and is located entirely in a residential zoning district.

The immediate surrounding neighborhood, with the exception of one nonconforming use which is gradually being discontinued, consists of one-family dwelling houses and lots platted for that purpose. The lots and houses owned by the remonstrants are on Calaman road, which runs

northerly off Reservoir avenue at a point about 100 feet from the nearest or southwesterly corner of lot 129. Handy avenue is the next street easterly from Calaman road and is about 212 feet from the southeast corner of lot 129. It also runs northerly off Reservoir avenue and is adjacent to the entire easterly side of lot 68. North Vale avenue is at the north side of lot 68 and runs between Handy avenue and Calaman road more or less parallel to Reservoir avenue.

The applicant on June 28, 1951, following our opinion in the prior case, *Harte* v. *Zoning Board of Review,* 78 R. I. 228, filed an application for a special exception under the zoning ordinance to permit the use of both lots for a supermarket and a parking lot. He submitted plans which called for the removal of the dwelling house from lot 129 and for the building of a large one-story cinder block and brick structure located partly on the rear of lot 129 and largely on the southeasterly portion of lot 68 on the Handy avenue side.

According to the plans, the front of the proposed building, measuring 172 feet, apparently would face Calaman road, but its southerly side was to be set back about 170 feet northerly from Reservoir avenue on the rear or residential portion of lot 129. The building would then extend back northerly and easterly in an expanding irregular shape into lot 68. Including the service ramps, the part of the building on lot 68 on Handy avenue on the plans measures about 173 feet on the east side and about 222 feet on the west as it continues into lot 129. No part of the market or other building was to be located on that part of lot 129 which is zoned for business. On the contrary it would be located entirely within the area of *both* lots which under the zoning ordinance was restricted for residential purposes. In fact only a comparatively small part of the building would be on lot 129, the major portion being on lot 68.

However, the entire area of lots 129 and 68 which was not devoted to the actual building and service ramps, excepting a five-foot area around the outside on the north,

west and part of the east sides, would be black topped and used for the parking of 200 automobiles. In other words the parking lot was to cover approximately 85,000 square feet, with entrances from Reservoir and Handy avenues. It was designed to provide parking on three sides of the building, the westerly portion thereof extending closely to the property of remonstrants. While the building itself would be approximately 120 feet from remonstrants' property lines the parking lot would extend to within five feet thereof.

The remonstrants are owners of lots improved by single dwelling houses on Calaman road. All lots on that road are now so improved. The rear boundary lines of their lots abut the westerly portion of lot 129 or 68 both of which are zoned for residential purposes. The average dwelling house lot, as delineated on the plat, appears to be 50 by 100 feet but lots 129 and 68 are not so divided on the plat.

In opposing the granting of the exception remonstrants presented evidence, including a real estate expert, showing in general the following facts. Their homes were purchased or built on the strength of the location in a residential zone. None of them is closer to the business zone on Reservoir avenue than 100 feet and the majority range from 250 to 390 feet from that zone. The whole surrounding neighborhood, apart from one nearby nonconforming dairy use that is on another lot and was there before zoning and is now being gradually discontinued, was laid out and used for dwelling houses. There is no need for a supermarket to serve this community in view of several small shopping centers that are available, and such a supermarket would cause a substantial increase and concentration of traffic from distant points. It would also create serious traffic hazards on heavily-traveled six-lane Reservoir avenue, and on Handy and North Vale avenues, as well as cause annoyance to the remonstrants from extensive parking during business hours. The exception applied for is not in harmony

with the general purposes and intent of the act, is not necessary for the convenience and welfare of the public or of this neighborhood, and in fact will be harmful to the value and appropriate use of the neighboring property which is all residential.

The remonstrants' testimony further brought out the fact that if the market were unsuccessful the placing of the building so far back from the business zone on Reservoir avenue and entirely in a residential zone would later make it possible, if not necessary, to permit its use in some other and even more undesirable business, even though no part of the building had been placed within the business area of lot 129 on Reservoir avenue. They further claimed that, considering the large area involved, the allowance of the exception would constitute arbitrary spot zoning which in effect would change the line of the business zone; that the granting of the exception for such spot zoning constituted an improper exercise of legislative power; and that in any event it was an arbitrary abuse of discretion.

On the other hand the applicant presented evidence, principally by himself and expert real estate men, who testified that there was need for a supermarket in that locality; that the neighborhood was developing and the location was strategic; that a large investment was contemplated, which probably would not be made unless it was expected to be successful; that in their judgment it would be successful, and if successful it was bound to serve the general public, convenience and welfare; that the undeveloped area was suitable only for low rent housing and was not far from a business section; that the proposed use would not be out of harmony with the purposes of the act or the use of neighboring property whose value at least would not be decreased; that the remonstrants, in purchasing property within 500 feet of a business zone, were bound to know and consider that business would probably encroach upon them; and that in any event the land along

Reservoir avenue should be rezoned for business to the depth of 300 feet instead of 100 feet as it was zoned by the council.

The applicant admitted that when he bought these lots he knew that the larger part of lot 129 and all of lot 68 were restricted solely for dwelling houses; that he operated several supermarkets in this state and elsewhere; and that none of them was as large and none appropriated as much space for the building and parking lot as he had proposed in his application. It was also admitted by the person who sold the lots to applicant that they were more valuable as a residential development.

The board found in substance that the public convenience and welfare would be substantially served by the proposed use; that appropriate use of neighboring property will not be substantially or permanently injured thereby; and that upon compliance with nine restrictions or conditions therein set forth the granting of an exception will be in harmony with the character of the neighborhood and appropriate to the uses or buildings authorized in such district. It thereupon granted the application for an exception.

The remonstrants, among other contentions, argue that general laws 1938, chapter 342, the enabling statute, clearly distinguishes between its grant of authority to the city council to amend a zoning ordinance, as provided in §2 thereof, and the grant of power to zoning boards of review to allow exceptions within limits therein set forth as contemplated by §8 of that statute; that sec. 24B, subparagraphs (4) and (8), of the zoning ordinance, without fixing rules or limitations in accordance with the requirements of §8 of the statute, purport to give the board a discretion to grant exceptions which is so comprehensive that its literal exercise here amounts in effect to the amending of the ordinance; that such a function does not belong to the zoning board but by statute is reserved to the city council; and that such power could not be delegated to the

board without laying down some standard, rules or limitations to govern the exercise of that power by the board.

They also argue that certain essential findings, which are made by the board only in the general terms of the statute or ordinance, are not supported by evidence; that there should be appropriate particular findings in the record; and that for reasons connected with a prior hearing by the board as then constituted upon a similar application, the remonstrants did not have a fair hearing in the instant case.

The applicant on the other hand contends that the ordinance conforms to the enabling statute; that its language is different from that which appeared in the case of *Flynn* v. *Zoning Board of Review*, 77 R. I. 118, and is similar to the one approved in *Woodbury* v. *Zoning Board of Review*, 78 R. I. 319; that the power to grant exceptions comes from the statute; and that the exercise thereof in the circumstances here as well as the decision is supported by the evidence and is in accordance with the terms of the enabling statute and ordinance.

As we view it, apart from other considerations the question is whether the exercise of discretion by the board is within the power contemplated by the enabling statute and ordinance, or whether it amounts to an abuse of such discretion. The remonstrants contend that the decision was made under sec. 24B, subparagraph (8), of the zoning ordinance whereas the applicant asserts that it was made under sec. 24B, subparagraph (4). In any event it is clear from the language of the decision that the board granted the exception under either or both of these sections of the ordinance.

Section 24B provides:

> "Special exceptions. When in its judgment the public convenience and welfare will be substantially served and the appropriate use of neighboring property will not be substantially or permanently injured, the board of review may in a specific case, after public notice and hearing and subject to appropriate condi-

tions and safeguards, authorize special exceptions to the regulations herein established as follows * * *."

Then follow fourteen subparagraphs, all of which with the exception of (4) and (8) include certain limitations or rules to guide the board in exercising such discretion.

The above-mentioned exceptions read as follows:

"(4) The location in any use district of a state or municipal building, college building, lodge or fraternal building, boat house, public utility, ice storage, pest house, penal or correctional institution, hotel, sanitarium or hospital, philanthropic or eleemosynary institution, sewage disposal or treatment plant, garbage disposal plant, refuse dump, coal mining, stone quarry, gravel or sand pit or of a use specified in section 9A as a special permit use with or without modifications in the yard and height regulations herein established."

"(8) In any district any use or building deemed by the said board to be in harmony with the character of the neighborhood and appropriate to the uses or buildings authorized in such district * * *."

Obviously these subparagraphs, if read literally and separately from other provisions of the ordinance and statute, purport to give an almost unlimited discretion to the board in a great variety of cases. But in our judgment they must be read in connection with the enabling statute, G. L. 1938, chap. 342. That statute clearly distinguishes between power granted to the council as provided in §2 thereof to amend an ordinance by substantially changing a zoning line and the power given to a zoning board to grant an exception in a proper case under the ordinance within the limitations as specified in §8 of that statute.

In our judgment such language did not contemplate that applications for an exception would become a routine alternative method to provide extensive changes in zones that were fixed by the council. Nor was it intended thereby to empower the board to introduce into any and every zone the uses mentioned in sec. 24B of the ordinance, even though otherwise prohibited, merely because they might commend themselves to the board's unrestricted discretion.

Further, in our judgment the statute was not intended to authorize an application for an exception as an easy means to avoid the necessity of seeking a variance with the consequent burden thereunder of showing undue hardship.

As we have stated previously, the power to grant exceptions is broad but its exercise by the board is not without some limitation. That power was intended to be used sparingly in exceptional cases to prevent placing on the property unnecessary burdens which would in effect deprive an owner of the reasonable and beneficial use of his property and to provide a flexibility in exceptional cases that would protect the owner against arbitrary effects that might follow from a literal enforcement of the terms thereof. See *Costantino* v. *Zoning Board of Review*, 74 R. I. 316; *Flynn* v. *Zoning Board of Review, supra; East Providence Mills, Inc.* v. *Zoning Board of Review*, 51 R. I. 428.

The enabling statute provides in §2 for a proper procedure to amend an ordinance and to make substantial changes in the lines of a zone. This power is delegated to and is reserved for the city council. The board is not authorized by any language of the statute requiring the creation of a zoning board of review to substitute its discretion in all cases to achieve what is reserved for appropriate action by the council. See *Allan* v. *Zoning Board of Review*, 79 R. I. 413; *Matteson* v. *Zoning Board of Review*, 79 R. I. 121.

In the instant case sec. 24B, subparagraphs (4) and (8), are so broad that if taken literally they purport to authorize a zoning board to act beyond the powers contemplated by the enabling statute. Indeed, if the zoning board may have the power to grant such an exception as is involved here, there would seem to be no need to seek the council's approval of an amendment of zoning lines or to have recourse at any time to an application for a variance. Apparently the board assumed that it had such a broad power. But we are of the opinion that in this regard it misconceived the

true purpose and intent of the statute in relation to the power to grant an exception.

Moreover, the city council apparently did not intend such a broad interpretation of power as the board has exercised here. This is illustrated by considering sec. 24B of the ordinance as a whole. Most of the subparagraphs thereunder are qualified in some way. One of them reads as follows:

"(6) The extension of a building or use into a more restricted district immediately adjacent thereto but not more than 50 feet beyond the boundary line of the district in which such building or use is authorized * * *."

Therefore if the applicant owned, when the zoning ordinance became effective, a supermarket building located within the 100-foot business area at the front of lot 129, and later for good reasons applied for an exception to expand his building and use into the adjacent residential zone, the board under subparagraph (6) could not have granted permission to exceed 50 feet. Yet here where the applicant had no such investment or building in the business area and had purchased both lots with knowledge of the residential restrictions on most of the land, he was given permission in effect to extend the business use more than 50 feet into the adjacent residential zoning district. Actually the permission authorizes extension of the building and business use into an adjacent residential zone for more than 400 feet. The decision is so extensive that it would transform the larger part of lot 129 and all of the still larger lot 68, together having an area of more than 100,000 square feet or the equivalent of 20 average house lots, from a restricted residence district into a business zone for a supermarket and a parking lot for 200 cars. Indeed this is not so much extending a business use as it is introducing a new business into a strictly residential Zone. See *East Providence Mills, Inc.* v. *Zoning Board of Review, supra.* Such a result does not appear to be consistent

with the provisions of sec. 24B when read as a whole, and certainly is so extensive in effect as to amount to amending the ordinance under the guise of granting an exception for a substantial change in the zoning line.

We find nothing in the law or evidence which would require or support such a grant of discretion. Nor can we find any adequate reasons in the evidence or in the findings of the board which explain wherein the instant case is different from one in which a similar application for an exception to permit a much smaller parking lot and supermarket in a residential area of the same city was denied by the zoning board. That decision was sustained by this court in *Potter* v. *Zoning Board of Review*, 65 R. I. 286. In our judgment the board misconceived the power to grant an exception as intended by the enabling statute, and as a result treated an application for an exception as a substitute method for making a substantial amendment to the ordinance to effectuate what it considered desirable. This function is a prerogative of the city council and not of the board. See *Allan* v. *Zoning Board of Review*, and *Matteson* v. *Zoning Board of Review, supra.*

In any event from a review of the evidence, the decision, and arguments of the respective parties, we are of the opinion that the decision of the board is arbitrary and an abuse of discretion. In view of this conclusion it is unnecessary to consider various other arguments in the briefs of the parties.

The petition for certiorari is granted, the decision of the respondent board is reversed, and the records in the case which have been certified to this court are ordered sent back to the respondent board.

*Joseph V. Cavanagh,* for petitioners.

*Richard F. Canning,* City Solicitor, *Sherwood & Clifford, Sidney Clifford, Raymond E. Jordan,* for respondent.