DECISION
This matter is before the Court on the appeal of Island Restoration Associates ("Appellant" or "IRA") from a decision of the Town of New Shoreham Zoning Board of Review ("Zoning Board" or "Board"). The Board's decision, filed and posted June 27, 2001, granted the application of IRA for a special use permit for an accessory apartment, provided Appellant compiled with certain conditions but denied Appellant's request for a variance from the applicable residential density limits. Appellant filed this timely appeal with this Court on July 17, 2001.[1] Jurisdiction is pursuant to G.L. 1956 § 45-24-69.[2] *Page 2 
 I Facts and Travel
Appellant owns real property located at 456-459 Chapel Street in the Town of New Shoreham, State of Rhode Island ("Town"), designated as Tax Assessor's Plat 6, Lot 11. The property contains four buildings, collectively known as Hagopian Marketplace, located within an Old Harbor Commercial Zone. The buildings serve a number of varied uses including residential dwelling, retail, restaurant and moped storage.
As a part of its efforts to reorganize the uses of the buildings located on its property, in 1996 IRA applied to the Zoning Board of Review of the Town of New Shoreham for a variance reducing by three the number of required parking spaces at the property so that a restaurant, which had previously occupied the building known as Fire Number 457, could be moved to Fire Number 456, thereby allowing it to add additional seating capacity. See Island Resources Associates Inc. v. Zoning Boardof Review of the Town of New Shoreham, No. WC 96-0306, May 5, 1999. In its written decision dated June 4, 1996, the Board granted the requested variance subject to, among others, a condition that the building with Fire Number 457, which had been used as a restaurant, be used only for retail space. Id. Appellant brought an appeal of that decision to the Washington County Superior Court. Appellant alleged that the condition *Page 3 
requiring that Fire Number 457 be used only as retail space arbitrarily restricted Appellant's use of the space precluding it from future use of the building as a restaurant in violation of the Rhode Island and United States Constitutions and in excess of the Board's powers. Id. In a written opinion dated May 5, 1999, the Superior Court rejected Appellant's claims finding:
 The [Board's] decision clearly does not place restrictions on the future use of the property, it simply places conditions on the present grant of a parking variance. The decision will have no effect on Fire # 457's use if Island Restoration ever decides to change it. The applicant would simply be required to apply for another parking variance should the sum of its uses on-site parking requirements not comply with § 502(A). Id.
Subsequently, IRA submitted an application to the Board for a special use permit to use a portion of one of the buildings on the property as an accessory apartment. A hearing was held on July 24, 2000, and in a written decision dated August 2, 2000, the Board denied the special use permit over concerns about the sufficiency of parking on the site. Upon receipt of that decision, Appellant filed an appeal to the Superior Court of Washington County, WC 00-398. A short time thereafter, Appellant acquired the rights to additional lands with which to develop alternative parking configurations and moved to remand the then-pending appeal arguing that the changed circumstances would render that appeal moot. The Superior Court then granted, over the Town's objections, a remand of that appeal to the Board.
Instead of presenting additional evidence on the prior application, on April 30, 2001, the Appellant then filed a second special use permit application seeking relief under the New Shoreham Zoning Ordinance, Article IV, § 406 (2001).[3] That second application is the subject *Page 4 
of this appeal.[4] The application was filed concurrently with an application for a variance seeking relief from the residential density requirements of the Old Harbor Commercial Zone. A public hearing on both applications was held on May 21, 2001.
During the hearing, Appellant presented two alternative site plans containing different parking configurations. Both plans called for the addition of an accessory apartment to be contained in building Fire Number 459 and the conversion of two of the retail units located in that building into apartment use. Mr. Mark Hagopian, IRA's principal owner, testified on behalf of IRA's application. After first confirming that the building was currently occupied by five retail units, Mr. Hagopian testified that the proposals before the Board would modify the occupancies of the building such that it would contain three retail units, two apartments, and one accessory apartment and that the total required parking for the proposed uses was fourteen spaces.
Mr. Hagopian, through the questioning of his counsel, William Landry, explained the breakdown of the existing and proposed parking requirements for each building in the complex. After moving into evidence Applicant's Exhibit 1, a paper chart that showed the existing and proposed parking breakdown, Mr. Hagopian addressed the needs of Fire Number 458 and Fire Number 459: *Page 5 
 MR. LANDRY: And with respect to building number 458 that's currently used for moped storage, there's no parking required; correct?
 Mr. HAGOPIAN: No, because the moped office covers the parking for that building.
 MR. LANDRY: Okay. And in Fire Number 459 with the uses proposed, we're proposing three retail units that would require one parking space apiece for a total of three spaces; correct?
 Mr. HAGOPIAN: Correct.
 MR. LANDRY: The moped office requires one space. The two new apartments that require one space each; correct?
 Mr. HAGOPIAN: Correct.
 MR. LANDRY: And an accessory apartment which requires one space; correct?
 Mr. HAGOPIAN: Correct. (Tr. at 7-8)
Mr. Hagopian then turned his attention to the two buildings housing restaurants:
 MR. LANDRY: And Fire Number 457, that was previously occupied last season by a restaurant known as —
 MR. HAGOPIAN: Xaymaca, (X-a-y-m-a-c-a).
 MR. LANDRY: That will still involve a restaurant but by written lease the number of seats in that restaurant is limited to ten; Correct?
 MR. HAGOPIAN: Correct.
 MR. LANDRY: And that would require one parking space?
 MR. HAGOPIAN: Correct.
 MR. LANDRY: And there is one dwelling unit in that building that requires one parking space as well; correct?
 MR. HAGOPIAN: Correct.
 MR. LANDRY: And finally on the fourth building, the Eli's Restaurant building, Eli's Restaurant would stay but again by limitation in the written lease the number of seats would be limited to forty; correct?
 MR. HAGOPIAN: That's correct.
 MR. LANDRY: And that means that four parking spaces would be required for that building?
 MR. HAGOPIAN: Correct.
 MR. LANDRY: And there is an additional dwelling unit in that building that requires one space; correct?
 MR. HAGOPIAN: Correct. (Tr. at 8-9)
After addressing the anticipated parking requirements, Mr. Hagopian began explaining the first of two parking alternatives that he would present to the Board. He testified that "the two *Page 6 
new spaces were additional spaces that we acquired by way of easement from a neighbor, Offshore Trading Company, Inc., ("Offshore") and they're shown shaded in gray as parking spaces 4 and 5 which are sort of in the shape of a hockey stick." He further explained that neither he nor Offshore had previously used the land of space number five as parking as it had been too small prior to the granting of the parking easement. He added that space number four had been the previous site of Offshore's dumpster. As such, the proposed parking alternative in plan one neither reduced the available parking for Offshore nor placed Offshore in jeopardy of violating any of its own zoning restrictions. Thereafter, a map of parking alternative one was introduced into evidence before the Board as Applicants Exhibit # 2.
Next Mr. Hagopian showed the Board parking alternative two and explained to the Board how it differed from parking alternative one:
 The difference is with this alternate we eliminate essentially the hockey stick and reduce the easement . . . to just the sliver of land at the northeast corner of the property. So that comprises space number 4. Space number 13 is presently occupied by two storage areas which we decided we could simply move elsewhere on the property and create indoor parking here that is not occupied by mopeds. . . ." (Tr. at 17)
Mr. Hagopian then made it clear that he did not have a preference for either of the alternates and that either one would be acceptable to him.
After concluding his testimony about the parking alternatives, Mr. Hagopian answered a number of Mr. Landry's questions designed to elicit testimony about the property's eligibility for relief under The Town of New Shoreham Zoning Ordinance § 406. Mr. Hagopian then testified to the fact that Fire Number 459 was in existence on April 18, 1998, that the proposed accessory apartment was to be self-contained with a maximum of two bedrooms with separate cooking and sanitary facilities for the exclusive use of the occupant, and that the property was connected to *Page 7 
the public sewer. He further testified that all the structures on the lots were held in common ownership, that all rental agreements would be written, that the building official would be granted access to inspect the apartment upon seventy-two hour notice, that the application would not result in more than four apartments being contained within the building and that the proposed accessory apartment would not account for more than fifty percent of the gross floor area of the building. If granted the special use permit, IRA agreed to record against the deed a restriction to run with the land that the occupancy of the apartment be limited to persons deriving income from employment on the island. Mr. Hagopian also clearly testified that neither the proposed accessory apartment nor the two proposed full apartments were uses that would be in conflict with the surrounding uses or that would be injurious to the surrounding property.
Under questioning from the Board, Mr. Hagopian assured the Board's members that his sewer and water allocations are sufficient to provide for the proposed accessory apartment. Additionally, the Board expressed concerns about the legality of the parking spaces in plan number one. In particular, the Board was concerned that someone seeking to park in space number four would not be able to get in and out of the spot without going through a vehicle parked in space number five. In response, Mr. Hagopian testified that individuals could use a driveway located on the abutter Offshore's property. However, he admitted that the wording of the parking easement secured from Offshore did not actually include the use of the driveway in order to access spot number four.
During the hearing, the Appellant entered into evidence a copy of the lease between IRA and Mayberry, Inc., the owner and operator of the forty seat restaurant. (See Applicant's Ex. 3.) The lease contained a purpose clause which read: "The Demised Premises shall be used solely for the purpose of the preparation and serving of food as a restaurant containing seating for no *Page 8 
more than forty customers and not for any unlawful purpose. . . ."Id. at 1. Appellant also introduced a copy of the lease between IRA and Li'l Fred's, Inc., the owner and operator of the ten seat restaurant. (See Applicant's Ex. 4.) The Li'l Fred's lease also contained a purpose clause which read: "The Demised Premises shall be used solely for the purpose of the preparation and serving of food as a restaurant containing seating for no more than ten customers and not for any unlawful purpose. . . ." Id. Additionally, a copy of the parking easement granting IRA the right to use a portion of Offshore's property was presented to the Board. (See Applicant's Ex. 5.)
The Zoning Board issued its written opinion and findings of fact on June 27, 2001. In a lengthy and detailed decision, the Board made a number of findings of fact and conclusions of law. Of particular relevance to this appeal, the Board specifically found that:
 [w]hile parking proposal # 1 (exhibit # 2) appears to provide the required number of spaces, space #4 is not accessible to the subject property because the average driver would not recognize that it is available, as it would appear to be blocked by space #5. In addition the applicant did not show that he had legal access over the Plat 6, Lot 115. (Phelan property) (Zoning Board Decision at 2.)
Likewise, with respect to the second parking plan, the Board found that " . . . parking proposal #2 (exhibit #6) also appears to provide the required number of spaces . . . " but "it is also lacking in accessibility due to the busy nature and variety of uses on the property." Id. Additionally, the Board noted that it had previously rejected the idea of interior parking as suitable for the site.Id. Finally, the Board concluded " . . . that the `Exiting parking' (sic) described in Exhibit #1 is inaccurate because a previous zoning decision dated June 4, 1996 specifically prohibited a restaurant use in Fire #457 as a stipulation to receiving a variance for three parking spaces." Id. *Page 9 
Ultimately, the Board found that the Appellant had satisfied its burden with respect to all of the Ordinance's criteria for a special use permit but failed to satisfy its burden with respect to the requested variance. Accordingly, the Board denied the application for a variance and approved the application for a special use permit with the condition, among others, that "[b]oth parking proposals (Exhibits # 2 6) shall be combined to create a total of fifteen spaces to alleviate the Board's concerns over the questionable legality and accessibility of some of the purported parking spaces." Id. This timely appeal challenging the Board's imposition of the parking condition followed.
 II Standard of Review
Rhode Island General Laws 1956 § 45-24-69 provides this Court with the specific authority to review decisions of town zoning boards. Under § 45-24-69(d), this Court has the power to affirm, reverse or remand a zoning board decision. In conducting its review, "[t]he court shall not substitute its judgment for that of the zoning board . . . as to the weight of the evidence on questions of fact." Section 45-24-69(d). This Court may reverse or modify the zoning board's decision only "if substantial rights of the appellant have been prejudiced because of findings, inferences, conclusions, or decisions which are:
 (1) In violation of constitutional, statutory, or ordinance provisions;
 (2) In excess of the authority granted to the zoning board of review by statute or ordinance;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion. Id. *Page 10 
Judicial review of administrative action is "essentially an appellate proceeding." Notre Dame Cemetery v. Rhode Island State Labor RelationsBoard, 118 R.I. 336, 339, 373 A.2d 1194, 1196 (1977); See also Mauriciov. Zoning Board of Review of the City of Pawtucket, 590 A.2d 879, 880
(R.I. 1991). Questions of statutory interpretation are reviewed by appellate courts de novo. Tanner v. Town Council, 880 A.2d 784, 791
(R.I. 2005). As to this Court's review of a zoning board's factual findings, when reviewing a zoning board decision, the Superior Court "lacks [the] authority to weigh the evidence, to pass upon the credibility of witnesses, or to substitute [its] findings of fact for those made at the administrative level." Restivo v. Lynch, 707 A.2d 663,665 (R.I. 1998) (quoting Lett v. Caromile, 510 A.2d 958, 960 (R.I. 1986)). The trial justice "must examine the entire record to determine whether `substantial' evidence exists to support the board's findings."DeStefano v. Zoning Bd. of Review of Warwick, 122 R.I. 241, 245,405 A.2d 1167, 1170 (1979).
Substantial evidence is relevant evidence that a reasonable person would accept as adequate to support the board's conclusion and amounts to "more than a scintilla but less than a preponderance." Caswell v.George Sherman Sand Gravel Co., 424 A.2d 646, 647 (R.I. 1981) (quotingToohey v. Kilday, 415 A.2d 732, 735 (R.I. 1980)) (other quotations omitted). In short, a reviewing court may not substitute its judgment for that of the board's if it "can conscientiously find that the board's decision was supported by substantial evidence in the whole record."Mill Realty Assocs. v. Crowe, 841 A.2d 668, 672 (R.I. 2004) (quotingApostolou v. Genovesi, 120 R.I. 501, 509, 388 A.2d 821, 825 (1978)). *Page 11 
 III Analysis A Jurisdiction of the Appeal in WC 00-398
In its complaint, Appellant requests this Court to resume jurisdiction of the appeal in WC 00-398. Section 45-24-69(b) of the Rhode Island General Laws provides the mechanism by which the Superior Court can order a remand of a zoning board appeal to a zoning board prior to a determination of the merits. That section provides:
 If, before the date set for the hearing in the superior court, an application is made to the court for leave to present additional evidence before the zoning board of review and it is shown to the satisfaction of the court that the additional evidence is material and that there were good reasons for the failure to present it at the hearing before the zoning board of review, the court may order that the additional evidence be taken before the zoning board of review upon conditions determined by the court. The zoning board of review may modify its findings and decision by reason of the additional evidence and file that evidence and any new findings or decisions with the superior court. Section 45-24-69(b).
Intending to present an alternative parking plan, on September 18, 2000, the Appellant moved to have this Court remand the then-pending appeal to the Board. In support of its motion, Appellant asserted that the "[c]ircumstances have changed since the original application whereby the plaintiff/applicant has obtained additional land to adequately address the Town's parking requirements. Approval of this revised application will render this appeal moot." (Appellant's Motion to Remand, Island Resources Associates Inc. v. Zoning Board of Review ofthe Town of New Shoreham, No. WC 00-398, September 9, 2000)
Making use of the statutory authority granted to it under § 45-24-69(b), this Court in its order dated September 20, 2000, granted Appellant's motion to remand the matter to the Board. *Page 12 
In doing so, this Court specified that the remand would be for "consideration of a revised parking plan." Instead of reopening the evidentiary proceedings and taking new evidence, in accordance with the requirements of § 45-24-69(b) ("the court may order that the additional evidence be taken before the zoning board of review upon conditions determined by the court,") the Board, with Appellant's assent, considered the new applications without addressing its previous determination.[5] In order to ensure the public interest is protected in cases where a zoning appeal has been remanded, our Supreme Court has required that "the remand hearing shall be conducted in the manner and subject to the notice requirements of . . . " the Enabling Act.Thibodeau v. Zoning Bd. of Review of City of Central Falls,108 R.I. 410, 413, 276 A.2d 283, 285 (1971). Here, no remand hearing was ever advertised, no record in the remanded case was ever filed, and no hearing on the remanded application ever took place. The Board, with Appellant's agreement, simply did not consider the remanded matter. Instead, the Board considered only the new applications.
Rhode Island law recognizes the principle of judicial estoppel.See D H Therapy Associates v. Murray, 821 A.2d 691, 693-94 (R.I. 2003); see also Gross v. Glazier, 495 A.2d 672, 675 (R.I. 1985). "Because the rule is intended to prevent improper use of judicial machinery, . . . judicial estoppel is an equitable doctrine invoked by a court at its discretion." New Hampshire v. Maine, 532 U.S. 742, 750 (2001) (internal citations omitted). "[J]udicial estoppel focuses on the relationship between the litigant and the judicial system as a whole," in order to promote truthfulness and fair dealing in court proceedings.D H Therapy, 821 A.2d at 693. Courts may invoke their discretionary powers to find judicial estoppel where a "party *Page 13 
seeking to assert an inconsistent position [from one previously advanced] would derive an unfair advantage . . . if not estopped."Id.
The Appellant successfully made motion to this Court to remand the 2000 decision so that the Board could hold supplemental hearings on its first application. Rather than press for the remand hearing, Appellant supported the separate notice and public hearing on its new application concerning the same property and concerning the same relief as requested in the 2000 decision. It is the opinion of the Court that Appellant effectively abandoned its appeal in the prior decision. "A zoning board has the power to consider a second application for a special exception involving the same subject matter when the applicant files a subsequent plan which has been substantially changed to address the objections raised by the board in denying the original application." Shippee v.Zoning Board of Appeals, 39 Conn. Supp. 436, 438, 466 A.2d 328, 330
(1983); see Johnston Ambulatory, 755 A.2d at 811. After arguing that the substantially changed circumstances were cause for remand, and then agreeing to participate in new hearings rather than re-open the previous hearings for new evidence, it would be unfair to now allow the Appellant yet another bite at the apple by advancing the theory that the Board should have reopened evidentiary hearings on remand. Accordingly, the Court finds that Appellant is now estopped from asserting that the Board should have held the ordered supplemental hearing on its 2000 application rather than hold a hearing on the new applications. Thus, only the 2001 decision of the Board, conditionally granting the special use permit, is properly before this Court on appeal. *Page 14 
 B The Board's Decision
Before turning to the specific challenges brought by the Appellant, the Court will review the statutory framework under which the Board made its decision. The Rhode Island General Assembly, through the Rhode Island Zoning Enabling Act of 1991, §§ 45-24-27 to 45-24-72, delegates to the state's municipal legislatures the ability to establish a local zoning ordinance controlling the usage and development of land. In order to ensure flexibility in land use but also to protect the public interest, the Enabling Act requires that the local legislative body "shall provide for the issuance of special-use permits approved by the zoning board of review." Section 45-24-42. The Town of New Shoreham has fulfilled that legislative command in Article 4 of its Town Zoning Ordinance.
Article 4, section 401 sets forth the general criteria required for the Board to grant a special use permit. In considering an application for a special use permit, the Zoning Board must ensure all criteria have been satisfied. Id. at § 401(A). If however, a specific criterion is not satisfied, the Board may employ its discretion to award the permit if it "determines that the adverse effect of the proposed use is outweighed by a countervailing public benefit." Id. In specific instances, including application for accessory apartments, the general requirements of § 401 are narrowed to more specifically address a particular type of proposed use. In the case of accessory apartments, applications for special use permits are directly governed by the provisions of § 406 of the Zoning Ordinance. Section 406 exists in order "to provide year-round rental housing for year-round residents, supplemental income for homeowners, and seasonal rental housing for those deriving income from employment on the island." Id. at (A). All accessory apartments applied for on the island must conform to the general requirements of *Page 15 
§ 406, which requires that "[t]he accessory apartment shall be self-contained with separate cooking and sanitary facilities for the exclusive use of the occupant. There shall be a maximum of two (2) bedrooms in an accessory apartment." Id. at (B)(1). Furthermore, all accessory apartments must be held in undivided ownership. Id. at (B)(2). In addition, for accessory apartments located within the Old Harbor Commercial Zone, no building may contain more than four apartments and the gross floor area of those apartments may not exceed 50% of the gross floor area of the building. Id. at (D)(1). Finally, for those located within the Old Harbor Commercial Zone:
 As a condition for the issuance and continued validity of an occupancy permit for accessory apartments, the owner shall execute and record against the deed to said property a restriction, running with the land and in favor of the Town, to the effect that occupancy of the accessory apartment shall be limited to persons domiciled in the Town year-round or deriving income from employment on the Island and that the apartments may not be offered for nor used for seasonal occupancy except for seasonal occupancy by persons deriving income from employment on the Island; and the owner shall file with the Town, prior to issuance of an occupancy permit and within thirty (30) days of any change in ownership of the premises, an affidavit, signed under the penalties of perjury by the owner of the principal structure, attesting to the fact that the accessory apartments are and will be limited to occupancy by persons domiciled in the Town year-round or deriving income from employment on the Island and that the dwellings will not be offered for nor used for seasonal occupancy except for seasonal occupancy by persons deriving income from employment on the Island. The affidavit shall be renewed by the owner of the premises every three (3) years as a condition for retaining an occupancy permit for the accessory apartments." Id. at (D)(2).
In addition to the requirements of Article 4, the performance standards for development on the Island are laid out in Article 5 of the Ordinance. With respect to parking, § 502(A) provides: *Page 16 
 Off-street parking in conformance with the following minimum requirements shall be provided and maintained for new construction, expansion of existing uses or structures, and changes of use. Where several uses occupy a single structure or lot, the total required parking shall be the sum of requirements of the individual uses. . . .
Appellant applied for a special use permit to build an accessory apartment and for a variance from the residential density restrictions. On June 27, 2001, the Board posted its decision letter on Appellant's application. In its letter, the Board concluded that it would deny the application for a density variance and grant the requested special use permit for an accessory apartment but conditioned that grant on, among others, the requirement that the Appellant combine the two parking proposals presented to the Board resulting in fifteen designated parking spaces at the property. Appellant does not challenge the Zoning Board's grant of a special use permit, nor does it appeal the Board's denial of the requested variance. Instead, Appellant brings a challenge to the conditions placed upon the grant of its permit by the Board.
Appellant first argues that the Zoning Board's findings of fact are unsupported by the record evidence in that they failed to take into account a previously granted variance permitting the property in question a three parking space reduction in required spaces. The previous variance was granted in 1996 and was conditioned upon the use of one of the buildings on the property, Fire Number 457, as retail space. See Island Resources Associates Inc. v. Zoning Board of Review ofthe Town of New Shoreham, No. WC 96-0306, May 5, 1999. Appellant asserts that the current use of the building as a "take out" food establishment qualifies as a retail use under the Town's Zoning Ordinance and that, as such, the previously granted variance remains in full force and effect. Appellant further contends that even if the use of Fire Number 457 has changed, any proposed change in use that does not result in the number of required *Page 17 
parking spaces for the aggregate uses on site exceeding the number actually available and authorized by variance does not invalidate a prior issued variance.
Appellant also argues that the conditions imposed on the grant of the special use permit were arbitrary and capricious, and clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record. In essence, Appellant argues first that the conditions are not supported by the record and; second, that in attaching the conditions to the grant of the special use permit the Board exceeded its statutory authority by requiring more parking spaces of Appellant than are required by the Zoning Ordinance in contravention of the express will of the Town Council and in excess of its own delegated authority.
In response, Appellees assert that the Board was properly able to consider the current and planned use of Fire Number 457 in the course of its deliberations on the special use permit. The Board was within its rights to conclude that the use of the building as a "take out" restaurant did not qualify as retail as required under the previously granted parking variance. As such, Appellees maintain, the Board was not in violation of ordinance provisions in concluding that the previously granted parking variance could not be relied on in calculating the number of required spaces for the property.
Appellees further contend that the Board relied on substantial evidence in arriving at its findings of fact and in conditioning its grant of the accessory apartment special use permit on the Appellant combining the two proposed parking plans, such that there were fifteen parking spaces designated on the property. Appellees assert that the evidence before the Board reasonably resulted in the Board's questioning the accessibility and legality of some of the proposed parking spaces. Finally, Appellees argue that the Board acted properly in applying the standards for *Page 18 
attaching conditions to the grant of a special use permit and acted within the scope of its legally delegated authority from the Town Council.
Thus, the dispositive issues on appeal are: (1) whether the Zoning Board's failure to include in its calculations of the required parking the three space dimensional parking variance that had previously existed on the property resulted in a decision that was arbitrary or capricious or characterized by abuse of discretion; and, (2) whether the Zoning Board possessed the statutory authority to grant the requested special use permit conditioned upon the provision of parking beyond that which is called for under the Zoning Ordinance. The Court shall address these issues seriatim.
 1 Calculation of Existing Spaces
Under Rhode Island law, a dimensional variance is defined as:
 Permission to depart from the dimensional requirements of a zoning ordinance, where the applicant for the requested relief has shown, by evidence upon the record, that there is no other reasonable alternative way to enjoy a legally permitted beneficial use of the subject property unless granted the requested relief from the dimensional regulations." Section 45-24-31(61)(ii).
While the rule is not uniform among the states, in Rhode Island variances permitting deviation from off street parking requirements are considered dimensional variances. See Westminster Corp. v. Zoning Boardof Review, 103 R.I. 381, 381, 238 A.2d 353, 353 (1968). In order to ameliorate the negative impacts a variance might have on abutting properties and to "promote the intent and purposes of the comprehensive plan and the zoning ordinance of the city or town," G.L. § 45-24-43
permits municipalities to grant their zoning board the authority to attach conditions to the variances they grant. See Richardson v. ZoningBoard of Review of Warwick, 101 R.I. 194, 194, 221 A.2d 460, 460 (1966) (zoning board may, but need not, *Page 19 
exercise discretion to attach conditions to grant of zoning relief). By the terms of the statute, "[f]ailure to abide by any special conditions attached to a grant constitutes a zoning violation." Section 45-24-43. Zoning boards are without original jurisdiction to determine zoning violations. See Wyss v. Zoning Bd. of Review, 99 R.I. 562, 562,209 A.2d 225, 225 (1956). However, in reaching a decision on an application for zoning relief, zoning board members are entitled to rely on their common sense in evaluating the evidence before them. See, e.g., Drabble v.Zoning Bd. of Review, 52 R.I. 228, 228, 159 A.2d 828, 828 (1932) (rejecting as "improbable" a business owners assertion that he was seeking to expand his building without the intention of increasing his business). Furthermore, on an application for relief it is "a fundamental requirement" in this state that zoning boards must "not refuse arbitrarily to receive and consider material evidence on the issues being tried." Hopf v. Board of Review of City of Newport,102 R.I. 275, 277, 230 A.2d 420, 422 (1967) (quoting Lumb v. Zoning Board ofReview, 91 R.I. 498, 502, 165 A.2d 504, 506 (1960)).
Here, the Appellant had, in 1996, applied for and received a variance permitting it to reduce by three the number of required parking spaces for the proposed combination of uses contained in the 1996 application. Specifically, the Appellant desired to use one of the buildings on its property, which had previously been used as retail, as a restaurant. In order to accommodate that use, the Board granted the variance but conditioned the grant on the use of Fire Number 457 as retail only. However, in the 2001 application for an accessory apartment, IRA presented a plan specifically showing the use of Fire Number 457 as a "take out" restaurant. As such, in deciding on the application for an accessory apartment, the Board excluded from its calculations the three spaces provided for in the previously granted variance. *Page 20 
Appellant contends that the 1996 variance established a new "baseline" from which to measure parking requirements on the property. As such, Appellant contends that either of the plans containing fourteen parking spaces satisfies, with three excess spaces, the required amount of parking on the lot and that the Board's failure to consider the existence of the three spots in determining the number of required spaces amounts to reversible error. In challenging the Board's method of calculation, Appellant asserts that the Board, in violation of this Court's previous decision in Island Resources, No. WC 96-0306, relied on the position that any change in uses on the property resulted in a loss of the variance.
A review of the record clearly indicates that the Board's determination not to count the three space variance in its calculations hinged not upon any change in the composition of uses on the property, but solely on the change in use of Fire Number 457 from retail to restaurant. Thus, the Board's finding that the description of the existing parking that the Appellant had submitted was "incorrect because a previous zoning decision dated June 4, 1996 specifically prohibited a restaurant use in Fire # 457 as a stipulation to receiving a variance for three parking spaces," was not affected by error of law nor in violation of its statutory authority. (Board's Decision at 2.)
A review of the written evidence and oral testimony provided to the Board reveals ample evidence for the Board to have found that the use in Fire Number 457 was as a restaurant and that the parking variance should therefore not be included in its calculations. At the hearing, Mr. Hagopian testified not only that the building had been used in the season before the public hearing as "a restaurant" but also that the contemplated use for the following season was to be a restaurant limited to ten seats. (Tr. at 8.) In addition to oral testimony, zoning boards may properly consider information contained in the applications and accompanying documents as evidence. See Gardiner v. Zoning Bd. ofReview, 101 R.I. 681, 681, 226 A.2d 698, 698 (1967) *Page 21 
(application showing layout of proposed uses permitted board to infer that the proposal would not be a detriment to the surrounding neighborhood). Furthermore, the Zoning Board was under an affirmative duty to consider this testimony. See Hopf, 102 R.I. at 277,230 A.2d at 422. Additionally, both parking proposals presented to the Board clearly identified the proposed use for Fire Number 457 as a restaurant. (See Applicant's Exhibits 2, 6.)
Even so, Appellant asserts that Fire Number 457 is not a restaurant as defined by the Zoning Ordinance, suggesting that the use of the term "restaurant" in the planning documents and oral testimony is merely an unfortunate coincidence of imprecise language. Appellant seeks to rely on the fact that the business in Fire Number 457 operates as a "take out" facility to argue that the business is a retail trade and not a restaurant under the Ordinance. The Town of New Shoreham Zoning Ordinance Article II, section 202 establishes the definitions to be used in interpreting the Ordinance. Under that section the term "Restaurant" is defined as "[a] facility for the preparation and serving of food and beverages." Id. at (A)(151). Conversely, the term "Retail Trade" is defined as:
 Any business engaged primarily in the sale, rental or lease of goods and/or services individually or in small quantities to the ultimate consumer for direct consumption and/or use, and not for resale. The term retail trade shall not include automotive rental or services, drive-up facilities or any type of restaurant. . . . Id. at 153.
Thus, argues Appellant, because the food is not served on premises, the use of the building is as retail trade. In this Court's opinion, Appellant suggests far too limited a reading of "restaurant" as used in the Ordinance. Appellant overlooks the possibility that food need not be served on a platter tableside by a waiter or waitress in order to be considered served. While this Court agrees that a convenience store selling prepackaged food or bottled beverages is not reasonably within the meaning of restaurant as contemplated by the Ordinance, this is unavailing *Page 22 
to the Appellant whose lease with its tenant contains a purpose clause reading: "The Demised Premises shall be used solely for the purpose of the preparation and serving of food as a restaurant. . . ." (Emphasis added.) The distinction between retail trade and restaurant lies in the plain words of the text of the Ordinance. See P.J.C. Realty, Inc. v.Barry, 811 A.2d 1202, 1206 (R.I. 2002) (Where text is clear and unambiguous, it must be effectuated by giving its words their plain and ordinary meaning.). Pursuant to the Ordinance, a restaurant must bothprepare and serve food. In contrast, if they sell food at all, retail trades — like convenience stores, merely sell or serveprepackaged foods. As such, it seems clear to this Court that, on the evidence before it and contained in the record, the Board's finding that the building known as Fire Number 457 was being used as a restaurant, was not clearly erroneous.
Under Rhode Island law, having determined that there was substantial evidence that Fire Number 457 was used as a restaurant, the Board was entitled to consider that fact, and its legal consequences, in its calculations of the required parking spaces for the property. InWyss, 99 R.I. at 564, 209 A.2d at 227, our Supreme Court found a zoning board had exceeded its jurisdictional bounds when the local board failed to grant a special exception because of a history of non-conformance with conditions attached to a previous variance. The Court declared that "[w]hen it grounded its consideration upon petitioners' prior violations of the zoning ordinance, it exceeded its legitimate authority and invaded the province of the courts." Id. However, while a zoning board is without original jurisdiction to enforce zoning violations, [6] and may not withhold zoning relief to which the applicant is entitled simply for a failure to adhere to a prior condition, the Board here did not seek to enforce the requirements of the three space condition on the Appellant, nor did the Board fail to grant relief based on the use of Fire Number 457 as a *Page 23 
restaurant. Rather, unlike the Wyss board, the Board in this case, in the course of passing on a request for a new variance, determined that the new uses proposed for the property, including the use of Fire Number 457 as a restaurant rather than as retail, necessarily resulted in the loss of the previously granted variance. In considering the evidence before it, the Board had not only the power but the obligation to consider the effect of the facts before it. To hold otherwise would be to require the Board's members to close their eyes and refuse to consider the material evidence. Zoning boards, however, may not "refuse arbitrarily to receive and consider material evidence." Hopf,102 R.I. at 286, 230 A.2d at 427. Thus, the Board was entitled to credit Appellant's own statements that the use of Fire Number 457 was "as a restaurant" and conclude that additional parking was required under the Ordinance.
In order to determine the number of required spaces at the site, the Board was required to examine the uses to be made of the properties as classified under the Zoning Ordinance. Despite Appellant's arguments to the contrary, the record contains ample evidence that the Fire Number 457 was actually used as a restaurant and the Board is neither permitted nor required to ignore that reality. Accordingly, this Court finds that the Board's decision not to include the parking variance in its calculation was not arbitrary or capricious or characterized by an abuse of discretion.
 2 The Zoning Board's Conditional Grant a The Permissibility of the Parking Condition
Zoning is a process which necessarily balances the public good with the private rights of land owners. Special use permits exist in order to ameliorate unnecessary burdens on an owner *Page 24 
of property that might result from a literal enforcement of the zoning ordinance. See Harte v. Zoning Bd. of Review of City of Cranston,80 R.I. 43, 43, 91 A.2d 33, 33 (1952). Land use regulation is challenging because, among other factors, each piece of land is unique. Recognizing these challenges, the Legislature, through the Enabling Act, specifically permits a municipality to delegate to local zoning boards the power to condition a grant of zoning relief upon compliance with special conditions established by the board. Section 45-24-43 reads:
 In granting a variance or in making any determination upon which it is required to pass after a public hearing under a zoning ordinance, the zoning board of review or other zoning enforcement agency may apply the special conditions that may, in the opinion of the board or agency, be required to promote the intent and purposes of the comprehensive plan and the zoning ordinance of the city or town. Failure to abide by any special conditions attached to a grant constitutes a zoning violation. Those special conditions shall be based on competent credible evidence on the record, be incorporated into the decision, and may include, but are not limited to, provisions for:
 (1) Minimizing the adverse impact of the development upon other land, including the type, intensity, design, and performance of activities;
 (2) Controlling the sequence of development, including when it must be commenced and completed;
 (3) Controlling the duration of use or development and the time within which any temporary structure must be removed;
 (4) Assuring satisfactory installation and maintenance of required public improvements;
 (5) Designating the exact location and nature of development; and
 (6) Establishing detailed records by submission of drawings, maps, plats, or specifications.
The Town of New Shoreham has vested its Zoning Board with the full measure of authority granted by the Rhode Island General Assembly as the language of § 45-24-43 is reproduced verbatim in the Town of New Shoreham Zoning Ordinance § 702(H). In attaching conditions to the grant of a special use permit, zoning boards have broad, but not unlimited, discretion. See Olevson v. Zoning Board of Review, 71 R.I. 303, 307,44 A.2d 720, 722 (1945). Conditions must be reasonable and not arbitrary, unnecessary or oppressive. Id. Additionally, *Page 25 
conditions must be based on competent evidence contained in the record and be clearly delineated in the zoning board's written decision.Id. Accordingly, the issue before the Court is whether the conditions imposed upon the Appellant by the Board are legally permissible.
The specific determination of what is reasonable, of course, depends upon the facts of any particular case. Certainly conditions rising to the level of takings are patently unreasonable and void. See Sako v.DelSesto, 688 A.2d 1296, 1296 (R.I. 1997) (condition requiring a husband and wife, who owned a strip of land jointly, to convey that land to husband, who was sole owner of the adjacent lot, exceeded boards authority); See also Dolan v. City of Tigard, 512 U.S. 374 (1994) (condition requiring dedication of a portion of the applicant's land as a bike path where applicant desired to pave its parking lot unconstitutional exaction); Gordon v. Zoning Bd of Appeals of Town ofClarkstown, 126 Misc. 2d 75, 75, 481 N.Y.S.2d 275, 275 (Sup. 1984) (condition requiring the dedication of land for future public use before the grant of a variance invalid condition).
The imposed conditions must reasonably relate to the effects of the special use permit ? that is, to the proposed use of the land, and to the protection of the health, morals, safety, or welfare of the public. Conditions relating to attributes other than those proposed uses are unreasonable and give rise to arbitrary decisions. See, e.g.,Olevson, 71 R.I. at 306, 44 A.2d at 721 (conditions based on the personal attributes of the applicant are unreasonable). Courts have regularly upheld conditions which go to the heart of the proposed uses. Thus, in Woodbury v. Zoning Bd. of Review, 78 R.I. 319, 319,82 A.2d 164, 164 (1951), our Supreme Court upheld the conditions attached to the grant of a special exception to operate a funeral home requiring parking be to the rear of the property with dimmed lights. Likewise, inBuckminster v. Zoning Bd. of Review, 69 R.I. 396, 396, 33 A.2d 199, 199
(1943), the Court upheld the condition that *Page 26 
signs advertising the applicant's business be located only on the side of the property facing the highway and not the residential community.See also Goldberg v. Zoning Bd. of Review of South Kingstown,639 A.2d 58, 58 (R.I. 1994) (per curium) (Board may condition the grant of a special use permit to install an experimental septic system upon a monthly inspection of the system and report to the building official.).
Here, Appellant challenges the imposition of condition number four, the condition requiring that IRA combine both of its parking proposals in order to create fifteen parking spaces. (Zoning Board Decision at 2.) In its decision, the Board finds that parking in the first proposal is lacking because "space #4 is not accessible to the subject property because the average driver would not recognize that it is available, as it would appear to be blocked by space #5." Id. The Board also finds that "the applicant did not show that he had legal access over the Plat 6, Lot 115.(Phelan property)(sic)" Id. Likewise with respect to the second proposal, the Board concludes that some of the spots are "lacking in accessibility due to the busy nature and variety of uses on the property," noting that "this board has previously rejected interior garage parking as being suitable for this site." Id. Accordingly, the Board established the challenged conditions in order to alleviate its "concerns over the questionable legality and accessibility of some of the purported parking spaces." (Zoning Board Decision at 2.) A review of the record reveals that the Boards conclusions, far from being arbitrary, unnecessary, or oppressive were well founded and reasonable in light of the evidence presented to the Board.
In his testimony, Mr. Hagopian described the parking in the first proposal as "in the shape of a hockey stick" (Tr. at 10) and admitted under questioning that space number four would not be accessible with a vehicle parked in space number five without the use of an abutters' driveway. Yet, when asked whether he had secured an easement to that effect, he *Page 27 
answered that he had not. Surely, this admission that IRA did not have legal access to one of its proposed spots amounts to more than a scintilla of evidence that the space was either illegal or inaccessible. Likewise, with respect to the second parking proposal, the Board was justified in relying on its previous determination based on the use patterns of the property, and the needs for parking at various hours throughout the day that interior garage parking was unsuitable for that property. Thus, in light of the deference owed by this Court to the Board, this Court cannot say that the Board's findings of fact were unsupported by the record evidence. Therefore, this Court finds that the parking condition of the Zoning Board Decision is supported by competent, credible record evidence. The underlying special use permit was granted for an accessory apartment. Competent record evidence demonstrates concerns over the accessibility of parking for the myriad uses on the site, and it is well within the discretion of the Zoning Board to require not only that the parking sites be designated in accordance with § 502(A) of the Zoning Ordinance, but also that parking on the site be accessible and reasonably recognizable as well. SeeWoodbury, 78 R.I. at 319, 82 A.2d at 164.
As the Board could have denied the special use permit because of the negative impact a lack of adequate parking could have had on the neighboring property, see Ord. Art. § 401(A), this Court finds that the Board acted reasonably when it granted the permit subject to the condition to provide fifteen parking spaces. This condition limits the impact of inadequate or inaccessible parking, thereby reducing safety, traffic, and congestion concerns. Further, it is addressed to legitimate concerns which go to the nature of the proposed use of the property. Such a condition falls within the Board's authority to both "minimize the adverse impacts" of the special use on neighboring properties and to "[a]ssur[e] satisfactory installation and maintenance of required public improvements." See Ord. Art. § 702(H)(1), (4); G.L. § 45-24-43(1), (4). As *Page 28 
such, this Court finds that the Zoning Board's imposition of the parking condition is supported by reliable, probative, and substantial record evidence.
 b The Scope of the Zoning Boards Authority
Appellants also contend that the Board's decision conditioning its grant of the special use permit on the Appellant's providing fifteen spaces amounts to a usurpation of the legislative prerogative from the Town Council in violation of the State's enabling statute. When acting pursuant to a delegation of power from the town council, a zoning board invades the legislative province of that council when its decision results in an amendment to the ordinance or a substantial change in the lines of established zoning. See Harte v. Zoning Board of the City ofCranston, 80 R.I. 43, 43, 91 A.2d 33, 33 (1952). In Harte, the question of the appropriate division of authority between a municipal council and a zoning board was placed before our Supreme Court when it reviewed a zoning board's grant of an application for a special exception to place a supermarket in a residential zone. Id. at 43, 91 A.2d at 33. The Court held that provisions of a municipal ordinance purporting to confer discretion on zoning boards must be read in conjunction with the delegation of authority to municipal councils to amend an ordinance and substantially change a zoning line in what was then § 2 of the Enabling Act. Id. at 53, 91 A.2d at 38. The Court expressed concern over the potential for circumventing the land use restrictions by way of the special exception noting that the special exception provisions were "not intended to authorize an application for an exception as an easy means to avoid the necessity of seeking a variance with the consequent burden thereunder of showing undue hardship." Id. at 52, 91 A.2d at 37. In delineating the proper scope of the special exception powers of a zoning board the court continued: *Page 29 
 . . . the power to grant exceptions is broad but its exercise by the board is not without some limitation. That power was intended to be used sparingly in exceptional cases to prevent placing on the property unnecessary burdens which would in effect deprive an owner of the reasonable and beneficial use of his property and to provide a flexibility in exceptional cases that would protect the owner against arbitrary effects that might follow from a literal enforcement of the terms thereof. Id.
Thus, the Court found that the zoning board had exceeded its authority in granting the special use permit. Id. at 53, 91 A.2d at 38; see alsoStaller v. Cranston Zoning Bd. of Review, 100 R.I. 340, 340,215 A.2d 418, 418 (1965) (Zoning boards determination that the construction of a thirty-two unit apartment building was in harmony with the character of a neighborhood containing only single family homes constituted nothing more than its value judgment as to the desirability of commingling multi-family with single-family dwellings and was invalid because in granting an exception the board was in effect determining that the property was improperly zoned); Adams v. Zoning Bd. of Review of City ofProvidence, 86 R.I. 396, 396, 135 A.2d 357, 357 (1957) (Board's grant of a Special Exception permitting a multiple dwelling area to be established entirely within an area restricted to a one-family use exceeded authority of the board).
In contrast to the dramatic alterations to the neighborhoods and zoning schemes in Staller, 100 R.I. at 340, 215 A.2d at 418 andAdams, 86 R.I. at 396, 135 A.2d at 357, the decision of the Board in the case at bar seeks to maintain the character of the Old Harbor Commercial Zone by ensuring that there is sufficient parking in an area with a history of congestion and parking problems. Rather than expressing a value judgment in contravention of the expressed intent of the Town Council, the Board here has made use of its legislatively delegated authority to ensure that the Council's intent that there be adequate parking in the zone comes to fruition. See Ord. Art. § 502(A). In imposing the requirement that both parking plans *Page 30 
be combined, the Board does not permit the construction of a structure out of character with the neighborhood but requires the addition of something already permitted within the zone. This Court also notes that the condition imposed by the Board is of a substantially smaller scale than were the exceptions granted by the boards that had overstepped their bounds. Thus, in the view of this Court, in attaching the parking condition to the grant of the special use permit, the Board was exercising its authority as authorized by the State's Enabling Act and Town Ordinance in order to provide flexibility and "protect the owner against arbitrary effects that might follow from a literal enforcement of the terms" of the Ordinance. Harte, 91 A.2d at 52. Accordingly, it cannot be said that the Board's actions amount to "an amendment to the ordinance or a substantial change in the lines of established zoning" in excess of its delegated authority. Harte, 91 A.2d at 33. Therefore, as its actions in attaching the parking conditions to its grant of the variance to IRA did not amount to an amendment in the Ordinance or a substantial change in the lines of zoning, this Court finds that the Board did not act in excess of the authority granted to it by statute and Ordinance.
Based on a review of all the competent evidence before the Zoning Board, the Court finds that Appellant introduced substantial evidence showing that its proposal satisfied all of the criteria for granting a special use permit to build an accessory apartment. The Court further finds that the Zoning Board acted upon substantial and reliable evidence contained in the record such that its decision was not arbitrary, capricious, or characterized by an abuse of discretion. As such, this Court concludes that the Board did not err in conditioning the grant of Appellant's special use permit on the maintenance of fifteen parking spots on the subject property. *Page 31 
 Conclusion
Given all of the foregoing, the decision of the Zoning Board granting the special use permit is affirmed. The Court finds that the Zoning Board's decision was not affected by error of law and that the Zoning Board did not act in excess of its statutory authority or in violation of ordinance provisions. Furthermore, this Court is satisfied that the Zoning Board's decision was supported by substantial evidence and is therefore not clearly erroneous, arbitrary and capricious, or an abuse of discretion. Substantial rights of Appellant have not been prejudiced.
Counsel shall submit an Order consistent with this Decision.
[1] Although filed in 2001, apparently no action was taken towards the resolution of this case until August of 2004, when the Court issued a scheduling order requiring the Plaintiff/Appellant to file its memorandum of law by August 30, 2004 with Defendants/Appellees to file within thirty days thereafter. Inexplicably, the scheduling order was not complied with but no objections to late filing or motions to dismiss were made by the Defendants. In November 2007, the case had two control calendar calls and the Appellant's memorandum of law was filed shortly thereafter on November 29, 2007 and Appellee's on April 3, 2008.
[2] Appellant failed to comply with § 45-24-69.1(a), which requires that an aggrieved party is to provide notice of its appeal to this Court to all persons that were entitled to notice of the hearings before the Zoning Board. An aggrieved party must then file an affidavit with this Court within twenty days after serving notice of its appeal certifying that such persons have been served with notice of the appeal. Section 45-24-69.1(d). Here, there is no evidence that Appellant served notice in accordance with § 45-24-69.1(a), nor does the Court file contain the affidavit required by § 45-24-69.1(d). Although the requirements set forth in § 45-24-69.1 are not jurisdictional in nature, Appellants' failure to comply with those requirements provides this Court with discretion to dismiss its appeal. See Jeff Anthony Properties v. ZoningBd. of Review of the Town of North Providence, 853 A.2d 1226, 1231-32
(R.I. 2004) (holding that dismissal is permissible only after giving due consideration to the reasons for a party's failure to comply with § 45-24-69.1 as well as any prejudice to the party that was not properly notified). Given that the Appellees have not objected to Appellant's violation of statutory provisions, this Court finds that the Appellees have not been prejudiced thereby. The Court also finds that Appellees are in a position to adequately protect the interest of any individuals who were entitled to, but did not receive, notice of this appeal and wished to express support for the Zoning Board's decision. Therefore, it does not appear that any such parties have been prejudiced by Appellant's failure to comply with the notice requirements of § 45-24-69.1. Given the foregoing, the Court declines to exercise its discretion to dismiss the appeal.
[3] In the time since this application was filed and this appeal was heard, the Town of New Shoreham undertook a comprehensive reorganization of its zoning ordinances. Importantly, for the purposes of this matter, the prior § 406 was moved from within Chapter Four of the ordinances dealing with special exceptions to Chapter Five of the ordinances containing performance standards and now resides in § 517. For purposes of simplicity, this decision will continue to refer to the 2001 version of the ordinances unless otherwise stated.
[4] Both the prior application and the application giving rise to this appeal seek a special use permit under § 406 of the Zoning Ordinance to allow the development of an accessory apartment in Fire Number 459. The doctrine of administrative finality normally serves to bar subsequent applications for the same relief absent a showing of a substantial or material change in circumstances in the time between the two applications. See Audette v. Coletti, 539 A.2d 520, 521-522 (R.I. 1988). What constitutes a material change depends on the context of the administrative scheme and the sought relief. See Johnston AmbulatorySurgical Associates, Ltd. v. Nolan, 755 A.2d 799, 811 (R.I. 2000). Notably, the Supreme Court has said that " . . . changed circumstances could be internal to the application, as when an applicant seeks the same relief but makes important changes in the application to address the concerns expressed in the denial of its earlier application. . . ."Id. Here, this Court is satisfied that the acquisition of parking easements, coupled with the redesigned alternative parking plans proposed by the Appellant constitutes such a material change. Accordingly, this Court finds that the doctrine of administrative finality did not bar the Board's consideration of the subsequent application.
[5] In doing so, the Board risked invalidation of its action under the doctrine of administrative finality. See note 3, Supra.
[6] A zoning board may, of course, exercise appellate jurisdiction to review the determination of a zoning violation made by a town building officer or zoning official. See Zeilstra v. Barrington Zoning Bd. OfReview, 417 A.2d 303 (R.I. 1980). *Page 1